TREG TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

FENNEMORE CRAIG P.C.
Norman D. James (AZ Bar No. 006901)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email:  njames@fennemorelaw.com
        tcarlton@fennemorelaw.com
(*pro hac vice applications forthcoming*)

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| State of Alaska, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) **COMPLAINT FOR DECLARATORY** |
| National Marine Fisheries Service, | ) **AND INJUNCTIVE RELIEF** |
| | ) |
| Defendant. | ) |

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                         Page 1 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 1 of 37

# INTRODUCTION

1.     The State of Alaska brings suit against the National Marine Fisheries Service ("NMFS"), a federal agency within the National Oceanic and Atmospheric Administration, U.S. Department of Commerce, for violations of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, in designating critical habitat for the Arctic subspecies of the ringed seal, *Pusa hispida hispida* ("ringed seal") and the Beringia distinct population segment ("DPS") of the Pacific bearded seal, *Erignathus barbatus nauticus* ("bearded seal"). *See Designation of Critical Habitat for the Arctic Subspecies of the Ringed Seal*, 87 Fed. Reg. 19,232 (Apr. 1, 2022) (codified at 50 C.F.R. § 226.228) ("Ringed Seal CH Rule"); *Designation of Critical Habitat for the Beringia Distinct Population Segment of the Pacific Bearded Seal*, 87 Fed. Reg. 19,180 (Apr. 1, 2022) (codified at 50 C.F.R. § 226.229) ("Bearded Seal CH Rule").

2.     The critical habitat that NMFS designated for each seal consists of an enormous area covering all or virtually all of the seal's range within the United States' jurisdiction, including coastal waters along the Alaskan North Slope and the adjacent Outer Continental Shelf. For the ringed seal, the critical habitat designation encompasses about 257,000 square miles, while the bearded seals' critical habitat designation encompasses about 273,000 square miles, amounting to a combined area containing 324,105 square miles (excluding overlapping areas). By comparison, the State of Texas contains 268,000 square miles while California contains 163,000 square miles. All of this critical habitat is occupied by members of the two seal species, which are among the most common marine mammals found in the Arctic region.

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief     Page 2 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 2 of 37

3.     NMFS's critical habitat designations conflict with the plain language of the ESA, which limits critical habitat to *specific areas* that are *essential to the conservation of the species*.  See 16 U.S.C. § 1532(5)(A) (definition of "critical habitat"). As the Supreme Court has explained, only those specific areas that are "indispensable" to the conservation of the species can be critical habitat. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 368-69 (2018).

4.     Moreover, NMFS failed to properly identify the specific areas on which the physical or biological features essential to the conservation of the species were found at the time of each seal's listing as a threatened species in 2012. *See* 16 U.S.C. § 1532(5)(A)(i) (definition of critical habitat within the geographic area occupied by the species).  NMFS conceded that it would be "impracticable" to identify specific areas where the essential features occur, and instead relied on impermissible speculation to designate critical habitat. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,232; Bearded Seal CH Rule, 87 Fed. Reg. 19,186.

5.     NMFS also failed to explain how the enormous areas allegedly containing sea ice and other essential features would be protected by the designation of critical habitat. NMFS failed to explain how Section 7 consultation will result in the preservation of the sea ice essential features that are at risk due to future climate change. Nor did NMFS explain how the impacts of oil and gas activity, marine shipping and transportation, or commercial fishing will be managed through the Section 7 consultation process. In fact, NMFS asserted that no project changes or other critical habitat protections will result from the designation of critical habitat, showing that the critical

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 3 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 3 of 37

habitat designations were not necessary and that the critical habitat is not essential to the conservation of the species.

6.      NMFS also failed in each case to make a specific finding on whether the designation of critical habitat would be prudent, as required by the ESA and the agency's regulations. *See* 16 U.S.C. § 1533(a)(3)(A); 50 C.F.R. § 424.12(a).  Critical habitat must be designated for a species only when it is prudent to do so. As NMFS explained in a recent rulemaking, in imposing that limitation, "Congress recognized that not all listed species would be conserved by, or benefit from, the designation of critical habitat." *Regulations for Listing Species and Designating Critical Habitat*, 84 Fed. Reg. 45,020, 45,040 (Aug. 27, 2019) (codified at 50 C.F.R. pt. 424).  As alleged more particularly below, in this case, there are several valid grounds for a "not prudent" finding, which the agency ignored.

7.      NMFS failed to consider the economic and other impacts resulting from the critical habitat designations for the seals prior to designating critical habitat. ESA Section 4(b)(2), 16 U.S.C. § 1533(b)(2), requires NMFS to take into consideration the economic impact of designating particular areas as critical habitat and allows NMFS to exclude specific areas where the benefits of exclusion outweigh the benefits of designation, unless the failure to designate such area would result in the extinction of the species. Here, NMFS failed to meaningfully consider the economic impacts likely to result from the critical habitat designations, and instead simply assumed that that no project modifications or other requirements would ever be imposed to protect critical habitat areas. Additionally, the agency failed to meaningfully consider whether to exclude areas

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                                    Page 4 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 4 of 37

from critical habitat, despite requests by commenters to do so, including requests by the State of Alaska and the North Slope Borough. The agency's failure to consider the economic impacts and relative benefits before designating critical habitat violated the ESA. *See Weyerhaeuser*, 139 S. Ct. at 371.

8. The critical habitat designations for the ringed seal and bearded seal therefore violated the ESA and are arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in excess of statutory authority, and without observance of the procedure required by law. 5 U.S.C. § 706(2). To the extent NMFS has failed to act in designating the seals' critical habitat, that action is unlawfully withheld or unreasonably delayed. *Id.* § 706(1).

9. Based on these violations, Alaska seeks judgment against NMFS ordering that the critical habitat designated for the ringed seal and the bearded seal be vacated and set aside, and for such other and further relief as may be necessary to prevent the enforcement of these unlawful designations.

*State of Alaska v. National Marine Fisheries Service*  Case No. _____
Complaint for Declaratory and Injunctive Relief  Page 5 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 5 of 37

10.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

(federal question), 28 U.S.C. § 1346 (United States as a defendant), and 28 U.S.C.

§§ 2201-2202 (declaratory and injunctive relief), 16 U.S.C. § 1540(c) and (g) (action

arising under the ESA citizen suit provision), and the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 701-706.

11.     The Ringed Seal CH Rule, published in the Federal Register on April 1,

2022, and codified at 50 C.F.R. § 226.228, is a final agency action for which Alaska has a

right of judicial review under the APA, 5 U.S.C. §§ 701-706.

12.     The Bearded Seal CH Rule, published in the Federal Register on April 1,

2022, and codified at 50 C.F.R. § 226.229, is a final agency action for which Alaska has a

right of judicial review under the APA, 5 U.S.C. §§ 701-706.

13.     The Court has authority to grant Alaska's requested relief pursuant to

28 U.S.C. §§ 2201, 2202 (declaratory and injunctive relief), 5 U.S.C. § 706 (APA), and

16 U.S.C. § 1540(g) (ESA).

14.     Pursuant to the ESA, Alaska sent NMFS a sixty-day notice of its intent to

sue on September 9, 2022.  *See* 16 U.S.C. § 1540(g)(2).  This notice was sent by

electronic and certified mail to Ms. Gina Marie Raimondo, the Secretary of the U.S.

Department of Commerce, Dr. Richard W. Spinrad, the Administrator of NMFS, and Ms.

Janet Coit, the Assistant Administrator for Fisheries of NMFS. It described the violations

of the ESA and its implementing regulations alleged hereinafter and requested that the

agency remedy the violations.

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                                    Page 6 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 6 of 37

15.     More than sixty days have passed since NMFS received Alaska's sixty-day notice.  However, NMFS has not remedied the violations described in the sixty-day notice.  Therefore, an actual, justiciable controversy exists between the parties concerning the agency's compliance with the ESA and its implementing regulations.

16.     Pursuant to 28 U.S.C. § 1391(e), venue lies in this judicial district because the critical habitat designated for the ringed seal and the bearded seal is located within Alaskan coastal waters and marine waters in the Bering, Chukchi, and Beaufort Seas off the coast of Alaska, and therefore is situated within this judicial district.

## PARTIES

17.     The Defendant in this action, NMFS, is part of the federal National Oceanic and Atmospheric Agency, of the United States Department of Commerce. NMFS is generally responsible for the administration of the ESA with respect to marine species and their habitat.  NMFS has jurisdiction over approximately 165 marine species listed as endangered or threatened under the ESA, including the bearded seal and the ringed seal. NMFS was responsible for issuing the final rules under ESA Section 4 that designated critical habitat for the bearded seal and the ringed seal in 2022, which are the subject of this case.

18.     Plaintiff State of Alaska, as a sovereign state and pursuant to its public trust responsibilities, has a significant interest in managing and conserving wildlife and natural resources within its jurisdiction, including the bearded seal and ringed seal, as well as their habitat and food sources. Alaska shares wildlife management responsibilities and

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                                    Page 7 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 7 of 37

jurisdiction with the federal government as a matter of constitutional law, with Alaska having the lead authority absent legislation that provides otherwise.

19.     Alaska is also responsible for its citizens' welfare, including their economic and social welfare. The oil and gas industry is Alaska's largest non-governmental industry, and accounts for 17 percent of Alaska's private sector jobs and 19 percent of its private sector payroll. In fiscal year 2020, revenue derived from the oil and gas industry in the form of taxes, royalties, and rentals provided Alaska with an estimated 24 percent of the State's general fund unrestricted revenues. Regulatory actions that prevent or impede oil and gas exploration, development, production, and related activities have a direct negative economic impact on Alaska and its citizens in the form of lost employment and revenues needed to provide essential services.

20.     The North Slope of Alaska and the adjacent offshore areas of the Beaufort and Chukchi Seas are the location of nationally strategic oil and gas exploration, development, and production activities, as well as mining and other resource development activities. Congress has established, and courts have affirmed, that leasing, exploration, and development of these natural resources are a national priority and in the public interest. For example, Congress has declared that the Outer Continental Shelf "is a vital national resource reserve held by the Federal Government for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs." 43 U.S.C. § 1332(3). The Supreme Court has acknowledged the "public interest in . . . continued oil production, given [the Outer

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief          Page 8 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 8 of 37

Continental Shelf Lands Act's] stated policy." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) (citing 43 U.S.C. § 1332(3)).

21.     NMFS has identified four primary sources of threats to one or more of the habitat features the agency considers to be essential to the conservation of ringed seals and bearded seals: climate change; oil and gas exploration, development, and production; marine shipping and transportation; and commercial fishing. NMFS also has stated that oil- and gas-related activities, dredge mining, navigational dredging, in-water construction activities, and commercial fishing are activities that affect the seals' critical habitat and therefore should be subject to the adverse modification standard under Section 7 of the ESA, 16 U.S.C. § 1536(a)(2).

22.     The extensive critical habitat designated for the ringed seal and the bearded seal will lead to additional and more complex Section 7 consultations under the adverse modification standard, causing project delays and unneeded modifications, additional costs for resource exploration and development, and litigation by groups opposed to the development and use of natural resources within critical habitat. These delays, modifications, and lawsuits are in turn likely to limit oil and gas development, mining, and related activities, preventing "expeditious and orderly development" of these resources to the detriment of Alaska and its citizens.

23.     Because of the importance to Alaska and its citizens of oil and gas exploration and production, mining and mineral production, and other resource development activities on the North Slope of Alaska and adjacent State and federal waters, Alaska has participated in the administrative process leading to the designations

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                         Page 9 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 9 of 37

of critical habitat for ringed seals and bearded seals under the ESA, including the submission of detailed comments that discussed various errors and problems with the designations and the sixty-day notice submitted pursuant to the ESA citizen suit provision summarizing the agency's violations of the ESA.

24.     The sovereign interests of Alaska are injured by the designation of critical habitat for the ringed seal and the bearded seal, including unnecessary delays and restrictions on oil and gas development, mining, and marine transportation. Alaska's injuries are caused by NMFS's failure to comply with the requirements of the ESA in designating critical habitat for the ringed seal and bearded seal.  In bringing this lawsuit, Plaintiffs seeks a judgment setting aside the unlawful critical habitat designations, which will redress Alaska's injuries.

## BACKGROUND REGARDING THE DESIGNATION OF CRITICAL HABITAT UNDER THE ENDANGERED SPECIES ACT

25.     The ESA is a comprehensive federal statute that is intended to conserve species of wildlife, fish, and plants that are currently in danger of extinction or are likely to become so in the foreseeable future.

26.     For a marine species to be subject to the ESA's protections, the species must first be listed by NMFS as either "endangered" or "threatened." *See generally* 16 U.S.C. § 1533(a)-(c). Under the ESA, a species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is considered to be "in danger of extinction" if the species is currently on the brink of extinction in the wild. A species is "threatened" if it "is likely to become an endangered

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                          Page 10 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 10 of 37

species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

27.     When NMFS lists a species as endangered or threatened the agency must also "designate any habitat of such species which is then considered to be critical habitat" unless it is not prudent to designate critical habitat or critical habitat is not then determinable. 16 U.S.C. § 1533(a)(3)(A); *see also* 50 C.F.R. § 424.12(a).

28.     The Supreme Court has explained that "'critical habitat' is the subset of 'habitat' that is 'critical' to the conservation of an endangered species." *Weyerhaeuser*, 139 S. Ct. at 368. "Under the statutory definition, critical habitat comprises areas occupied by the species 'on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection,' as well as unoccupied areas that the Secretary determines to be 'essential for the conservation of the species.'" *Id.* at 368-69 (quoting 16 U.S.C. § 1532(5)(A)). Under this definition, "only certain areas that are indispensable to the conservation of the endangered species" can constitute "critical habitat." *Id.* at 369.

29.     Under Section 4 of the ESA and NMFS's regulations governing the designation of critical habitat, NMFS must first determine whether the designation of critical habitat is prudent and determinable for that species. *See* 16 U.S.C. § 1533(a)(3)(A); 50 C.F.R. § 424.12(a)(1), (2).

30.     Under NMFS's regulations, it is not prudent to designate critical habitat when "threats to the species' habitat stem solely from causes that cannot be addressed through management actions resulting from consultations under section 7(a)(2) of the

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 11 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 11 of 37

Act." 50 C.F.R. § 424.12(a)(1)(ii). In addition, it is not prudent to designate critical

habitat when "[a]reas within the jurisdiction of the United States provide no more than

negligible conservation value, if any, for a species occurring primarily outside the

jurisdiction of the United States," or if "[n]o areas meet the definition of critical habitat."

*Id.* § 424.12(a)(1)(iii), (iv).

31.    Under the definition of "critical habitat" in the ESA, critical habitat consists

of the "*specific areas*" within the geographic area occupied by the species at the time it is

listed that contain "physical or biological features *essential* to the conservation of the

species" which may require "special management considerations or protection."

16 U.S.C. § 1533(a)(3)(A)(i) (emphasis added).

32.    The term "essential" is not defined in either the ESA or the implementing

regulations. Its ordinary meaning is "of the utmost importance" or "indispensable."

Essential, Merriam-Webster's Collegiate Dictionary (10th ed. 2000). The Supreme Court

also has explained that critical habitat consists of certain areas of the species' habitat

"that are *indispensable* to the conservation" of the species. *Weyerhaeuser*, 139 S. Ct. at

369 (emphasis added).

33.    NMFS's regulations require a four-step process for identifying the specific

areas within the geographic area occupied by the species that are eligible for designation

as critical habitat:

    i.    Identify the geographic area occupied by the species at the time of listing;

    ii.    Identify the physical and biological features essential to the conservation of

        the species;

*State of Alaska v. National Marine Fisheries Service*      Case No. _____
Complaint for Declaratory and Injunctive Relief                                      Page 12 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 12 of 37

iii. Determine the specific areas within the geographical area occupied by the species that contain the physical and biological features essential to the conservation of the species; and

iv. Determine which of these features require special management or protection. 50 C.F.R. § 424.12(b)(1)(i)-(iv).

34.     Critical habitat cannot be designated within foreign countries or within areas outside of the jurisdiction of the United States. *See* 50 C.F.R. § 424.12(g).

35.     Critical habitat may not include the entire geographical area that can be occupied by the threatened or endangered marine species, except in circumstances determined by the Secretary of Commerce. 16 U.S.C. § 1532(5)(C).

36.     Prior to designating critical habitat, NMFS is required to consider the economic, national defense, and other impacts of specifying particular areas as critical habitat, and to weigh those impacts against the benefit to the species of designating the area as critical habitat. 16 U.S.C. 1533(b)(2); *see also Weyerhaeuser*, 139 S. Ct. at 371. This provision of the ESA, Section 4(b)(2), authorizes the agency to exclude specific areas from critical habitat if "the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat," unless the failure to designate such area as critical habitat will result in the extinction of the species concerned. *Id.*

37.     The rulemaking procedures by which NMFS makes critical habitat designations are set forth in ESA Section 4 and agency regulations codified at 50 C.F.R. Part 424. NMFS's determination whether a species' habitat is eligible to be designated as critical habitat must be made "solely on the basis of the best scientific and commercial

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                          Page 13 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 13 of 37

data available[.]" *Id.* § 1533(b)(2). The Supreme Court has explained that this requirement is intended to ensure that decisions are not made on "the basis of speculation or surmise." *Bennett v. Spear*, 520 U.S. 154, 176 (1997).

## GENERAL BACKGROUND

38.     Arctic ringed seals are circumpolar and are found throughout seasonally and year-round ice-covered waters of the Arctic Ocean Basin and southward into adjacent seas, including the Beaufort, Chukchi, and Bering Seas off Alaska's northern and western coast.  Ringed seals are one of the most common marine mammals in the Arctic region. The species' current population is estimated to be in the millions and is believed to be stable or increasing. Nonetheless, NMFS listed the Arctic ringed seal subspecies as a threatened species under the ESA. *See Final Rule Listing the Arctic, Okhotsk, and Baltic Subspecies of Ringed Seal*, 77 Fed. Reg. 76,706, 76,716 (Dec. 28, 2012) ("Ringed Seal Listing Rule").

39.     Arctic ringed seals are generally considered to occupy their entire historic range within the jurisdiction of the United States. Scientists recently estimated that the minimum population of ringed seals in the U.S. portion of the Beaufort, Chukchi, and Bering Seas is 470,000 seals.

40.     Bearded seals are common marine mammals with a circumpolar distribution south of 85 degrees North latitude, including the Beaufort, Chukchi, and Bering Seas off Alaska's coast. As for ringed seals, the presence of bearded seals is closely associated with areas that contain sea ice.

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                          Page 14 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 14 of 37

41.     In 2012, NMFS determined that the Pacific bearded seal subspecies, *Erignathus barbatus nauticus*, consists of two distinct population segments ("DPS"), the Beringia DPS and the Okhotsk DPS. The area occupied by the Okhotsk DPS is limited to the Sea of Okhotsk, off the coast of eastern Russia. The Beringia DPS, by contrast, occupies the Arctic Ocean and adjacent seas along the northern coasts of Russia, the United States and Canada, including the Beaufort, Chukchi, and Bering Seas, where the species is a common marine mammal. Nonetheless, NMFS listed both DPSs as threatened species under the ESA. *See Endangered and Threatened Species; Threatened Status for the Beringia and Okhotsk Distinct Population Segments of the Erignathus Barbatus Nauticus Subspecies of the Bearded Seal*, 77 Fed. Reg. 76,740 (Dec. 28, 2012) ("Bearded Seal Listing Rule").

42.     Like ringed seals, bearded seals are considered to occupy their entire historic range within the jurisdiction of the United States. The minimum population of bearded seals in the U.S. portion of the Bering and Chukchi Seas was recently estimated to be 357,329 seals.

43.     On April 1, 2022, NMFS issued final rules designating critical habitat for the Arctic subspecies of ringed seal ("ringed seal") and the Beringia DPS of the bearded seal ("bearded seal"). *See* Ringed Seal CH Rule; Bearded Seal CH Rule.

44.     The International Union of Conservation of Nature ("IUCN") is an international organization working in the field of nature conservation and sustainable use of natural resources. It is involved in data gathering and analysis, research, field projects, advocacy, and education. The IUCN maintains a comprehensive list on the global

*State of Alaska v. National Marine Fisheries Service*        Case No. _____
Complaint for Declaratory and Injunctive Relief              Page 15 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 15 of 37

conservation status of animal and plant species called the IUCN Red List. The Red List provides information about range, population size, habitat and ecology, use and/or trade, threats, and conservation actions that will help inform necessary conservation decisions. The ringed seal and the bearded seal are listed as species of "Least Concern" by the IUCN.

45.     Because the ringed seal and the bearded seal are common marine mammals that occupy vast portions of the Arctic Ocean Basin, the listings of the ringed seal and the bearded seal have created irreconcilable tension with the analysis NMFS must undertake to designate critical habitat. This tension has led to critical habitat designations that are grossly excessive and in conflict with the requirement in the definition of critical habitat that they be limited to "specific areas" within the species' habitat that contain features that are essential to the species' conservation.

46.     NMFS acknowledged in its final rules that the critical habitat designations for the seal species provide, at most, negligible conservation value to the species. Consequently, the designations are overbroad and violate the ESA and its implementing regulations, as more particularly alleged below.

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                    Page 16 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 16 of 37

## SPECIFIC CLAIMS FOR RELIEF

### First Claim for Relief

### (Failure to Designate Specific Areas as Critical Habitat)

47.     Paragraphs 1 through 46 are realleged as if fully set forth and incorporated herein by reference.

48.     The critical habitat designated by NMFS for the ringed seal and the bearded seal cover vast geographic areas that include all or virtually all of each seal's range within the United States' jurisdiction.

49.     The critical habitat designated for the ringed seal consists of a single "specific area" containing approximately 257,000 square miles or about 164 million acres.  This "specific area" is nearly the size of the State of Texas (268,000 square miles), and significantly larger than the State of California (163, 000 square miles). All of the designated critical habitat is located within the Bering, Chukchi, and Beaufort Seas within the limit of the U.S. Exclusive Economic Zone adjacent to the coast of Alaska.

50.     The critical habitat designated for the bearded seal consists of a single "specific area" containing approximately 273,000 square miles or about 174 million acres.  This "specific area" is larger than the State of Texas (268,000 square miles) and significantly larger than the State of California (163,000 square miles). All of the designated critical habitat is located within the Bering, Chukchi, and Beaufort Seas within the limit of the U.S. Exclusive Economic Zone adjacent to the coast of Alaska.

51.     The combined area covered by the critical habitat designated for the two species is approximately 324,105 square miles, or over 207 million acres, excluding

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                                    Page 17 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 17 of 37

overlapping areas. This area includes all United States waters within the Chukchi Sea, as well as substantial portions of the Bering Sea and the Beaufort Sea. Moreover, NMFS actually determined that the entire Beaufort Sea within the U.S. Exclusive Economic Zone meets the definition of critical habitat for the ringed seal, but excluded about 46,000 square miles (29 million acres) in the Beaufort Sea from the designation on national security grounds. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,248-49.

52.     The entire area covered by the ringed seal's final critical habitat and the excluded area is considered to be occupied by members of that species. The area is also considered to be the ringed seal's historic range within the jurisdiction of the United States.

53.     The entire area covered by the bearded seal's critical habitat is considered to be occupied by members of that species. That area is also considered to be the bearded seal's historic range within the jurisdiction of the United States.

54.     NMFS determined that the entire area that can be occupied by bearded seals and ringed seals within the jurisdiction of the United States contains features that are essential to the conservation of the species.  Even the area excluded from the ringed seal critical habitat on national security grounds under ESA Section 4(b)(2) was determined by NMFS to meet the definition of critical habitat, i.e., to contain features that are essential to the conservation of the species.

55.     Only "specific areas within the geographic area occupied by the species" can constitute "critical habitat." 16 U.S.C. § 1532(5)(A); *see also* 50 C.F.R. § 424.12(b)(1).  NMFS's decision to designate "one specific area" of critical habitat for

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 18 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 18 of 37

bearded seals and for ringed seals—each greater than 160 million acres and covering all of the species' United States' historic range (except for the area excluded under Section 4(b)(2))—conflicts with the plain language of the statute and its implementing regulations. It makes little sense to say that an area that is larger than every U.S. state except Alaska is a "specific area within the geographic area occupied by the species."

56. The enormous and continuous blocks of critical habitat designated for the ringed seal and the bearded seal conflict with the statutory term "critical habitat," which requires that critical habitat be limited to _specific areas_ that contain features essential to the conservation of the species. *See* 16 U.S.C. § 1532(5)(A)(i); *see also* 50 C.F.R. § 424.12(b)(1). Therefore, the critical habitat designations are unlawful.

## Second Claim for Relief

### (Failure to Consider All of the Species' Global Habitat)

57. Paragraphs 1 through 56 are realleged as if fully set forth and incorporated herein by reference.

58. As alleged hereinabove, the ringed seal and the bearded seal each occupy an enormous area within the Arctic Ocean Basin and adjoining seas. The ringed seal is a circumpolar species, and its range includes the Arctic, Atlantic, and Pacific Oceans—an enormous geographical area that contains millions of square miles. The bearded seal's range is also extensive, and includes the Arctic Basin and adjoining seas along much of Russia, Alaska, and western Canada, including portions of the Bering, Chukchi, Beaufort, and East Siberian Seas.

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 19 of 36

Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 19 of 37

59.     If the entire geographic area occupied by each of the seals at the time of listing is taken into account, then the "specific areas" designated as critical habitat for the two seals – despite their vast size – encompass only a small portion of the geographic area occupied by the species at the time of listing.

60.     The physical and biological features determined to be essential for the conservation of the ringed seal are common throughout the species' extensive range.

61.     The physical and biological features determined to be essential for the conservation of the bearded seal are common throughout the species' extensive range.

62.     The existence of an extensive occupied area outside of the area designated as critical habitat for the two seal species, which contains the same essential physical and biological features, indicates that the critical habitat is not actually essential, i.e., indispensable, to the conservation of these species.

63.     NMFS failed to explain why the critical habitat designated for the ringed seal contains habitat features that are essential to the conservation of the ringed seal species despite the presence of an enormous geographic area outside the critical habitat that was occupied by the species at the time of listing and contains the same essential habitat features.

64.     NMFS failed to explain why the critical habitat for the bearded seal contains habitat features that are essential to the conservation of the bearded seal despite the presence of an enormous geographic area outside that critical habitat that was occupied by the species at the time of listing and contains the same essential habitat features.

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 20 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 20 of 37

65.     While critical habitat cannot be designated outside of areas within the jurisdiction of the United States, the existence and conservation value of these vast areas, which are occupied by the species and contain the same essential habitat features, are relevant to determining what qualifies as critical habitat for the ringed seal and the bearded seal.  NMFS, however, ignored these areas and their importance to the conservation of the species in designating critical habitat for the ringed seal and the bearded seal.  This was unlawful. *See*, *e.g.*, *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 935 (9th Cir. 2010) (stating that agency action is arbitrary and capricious under the APA where agency "failed to consider an important aspect of the problem").

**Third Claim for Relief**

**(Failure to Designate Specific Areas that Contain the Essential Habitat Features)**

66.     Paragraphs 1 through 65 are realleged as if fully set forth and incorporated herein by reference.

67.     In determining the "critical habitat" of a listed species, NMFS must identify "the specific areas within the geographical area occupied by the species, at the time it is listed . . . on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection." 16 U.S.C. § 1532(5)(A)(i).

68.     The Supreme Court has stated that the ESA should "not be implemented haphazardly, on the basis of speculation or surmise." *Bennett v. Spear*, 520 U.S. 154, 176-77 (1997). Although that case addressed a biological opinion issued under ESA

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                         Page 21 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 21 of 37

Section 7, the same basic requirement applies to the designation of critical habitat. *Compare* 16 U.S.C. § 1533(b)(2) *with* § 1536(a)(2).

69.     In designating critical habitat for the ringed seal and for the bearded seal, NMFS "concluded that the best approach to determine the appropriate boundaries for critical habitat [for bearded and ringed seals] is to base the delineation on the boundaries identified above for the sea ice essential features." Ringed Seal CH Rule, 87 Fed. Reg. 19,239; Bearded Seal CH Rule, 87 Fed. Reg. 19,186.  Yet NMFS conceded in both critical habitat designations that it is uncertain where these sea ice essential features are found from year to year. For example, NMFS stated that the "duration that [essential] sea ice habitat . . . is present in any given location can vary annually depending on the rate of ice melt and other factors." *Id*. NMFS also determined it is "impracticable to separately identify specific areas where each of these essential [habitat] features occur."  *Id.*

70.     NMFS's conclusion regarding the specific areas that contain the physical and biological features that are essential to the conservation of the species is overbroad and improperly based on speculation about whether physical or biological features essential to the conservation of the species were actually present at the time of listing, as the ESA and its implementing regulations require. *See* 16 U.S.C. § 1532(5)(A)(i); 50 C.F.R. § 424.12(b)(1).

71.     NMFS made a critical habitat determination despite recognizing it lacked the data to properly identify the specific areas that contained the physical or biological features essential to conservation of the bearded and ringed seals when listing occurred.

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 22 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 22 of 37

72.     NMFS admitted that it was impracticable to identify "specific areas" where there are essential features and instead used a "coarse scale," which amounted to drawing a line around an area roughly the size of Texas.

73.     Consequently, NMFS failed to make the findings required to support a legitimate critical habitat designation under 16 U.S.C. § 1532(5)(A)(i) and NMFS's regulations governing critical habitat designation. *See, e.g.*, *Weyerhaeuser*, 139 S. Ct. at 371 (discussing the common administrative law claim that "the agency did not appropriately consider all of the relevant factors that the statute sets forth to guide the agency in the exercise of its discretion").

## Fourth Claim for Relief

### (Failure to Explain How the Essential Habitat Features Will Be Protected)

74.     Paragraphs 1 through 73 are realleged as if fully set forth and incorporated herein by reference.

75.     NMFS identified three physical and biological features that are essential to the conservation of the ringed seal. The first essential feature is snow-covered sea ice habitat suitable for the formation and maintenance of subnivean birth lairs used for sheltering pups during whelping and nursing in waters three meters or more in depth. The second essential feature is sea ice habitat suitable as a platform for basking and molting. The third essential feature consists of adequate prey species, which include various species of fish (e.g., cod species), shrimp, and amphipods commonly found in the region. Ringed Seal CH Rule, 87 Fed. Reg. 19,236-39.

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                        Page 23 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 23 of 37

76.     NMFS identified three physical and biological features that are essential to the conservation of the bearded seal.  The first essential feature is sea ice habitat suitable for whelping and nursing, which is defined as areas with waters 200 meters or less in depth containing pack ice of at least 25 percent concentration and providing bearded seals access to those waters from the ice. The second essential feature is sea ice habitat suitable as a platform for molting in waters 200 meters or less in depth. The third essential habitat feature is adequate prey species, consisting of various species of demersal fish (e.g., cod and sculpin), epifaunal crustaceans (e.g., shrimps and crabs), infaunal invertebrates (e.g., mollusks) commonly found in the Arctic region in waters 200 meters or less in depth. Bearded Seal CH Rule, 87 Fed. Reg. 19,184-85.

77.     NMFS next identified four "primary sources of potential threats" to the essential habitat features for the two seal species, and stated that "special management considerations or protections may be necessary, either now or in the future." The primary sources of potential threats identified by NMFS are climate change; oil and gas exploration, development, and production; marine shipping and transportation; and commercial fisheries. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,241-44; Bearded Seal CH Rule, 87 Fed. Reg. 19,189-91.

78.     Under NMFS's regulations, "special management considerations or protection" is defined as "[m]ethods or procedures useful in protecting the physical or biological features essential to the conservation of listed species." 50 C.F.R. § 424.02.

79.     NMFS failed to explain how the designation of critical habitat will result in the use of "methods and procedures useful in protecting" the sea ice features that are

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 24 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 24 of 37

considered to be essential to the conservation of the seal species, nor did the agency explain what those methods and procedures would be and how they would be implemented.

80.    NMFS instead discussed the "benefits" of designating critical habitat for each seal species.  The agency acknowledged that the primary conservation benefit of the critical habitat designations, and their only tangible regulatory consequence, stems from the ESA's Section 7 consultation requirement that applies to discretionary federal actions. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,245; Bearded Seal CH Rule, 87 Fed. Reg. 19,193.

81.    ESA Section 7(a)(2) prohibits federal actions that are likely to jeopardize the continued existence of a threatened or endangered species (known as the "jeopardy" standard) or result in the destruction of adverse modification of critical habitat (known as the "adverse modification" standard). *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.01. This provision also requires consultation between the federal agency that is proposing an action and NMFS (in the case of listed marine species like the seal species here) to ensure that the jeopardy and adverse modification standards will not be violated. *See* 50 C.F.R. § 402.01.

82.    In designating critical habitat for the seal species, NMFS failed to explain how Section 7 consultation on the impacts of discretionary federal actions on critical habitat will result in the protection of the sea ice essential features that are at risk due to future climate change. Nor did NMFS explain how the impacts from oil and gas exploration and development, marine shipping and transportation, and commercial

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                                    Page 25 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 25 of 37

fishing on sea ice essential features will be avoided or minimized through the Section 7 consultation process. In fact, NMFS concluded that _no_ project modifications or other critical habitat protections are expected to result from the designation of critical habitat. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,246; Bearded Seal CH Rule, 87 Fed. Reg. 19,1893-94. Instead, any project modifications or other protections will result from avoiding or minimizing impacts to the species under the ESA Section 7 "jeopardy" standard, including impacts on the species' habitat.

83.     Other purported benefits of designating critical habitat for the seals are largely informational in nature and inapposite. For example, NMFS stated that a benefit of critical habitat designation is that it provides other federal agencies and the public "specific notice of the areas and features essential to the conservation of the [species]." Ringed Seal CH Rule, 87 Fed. Reg. 19,245. But each of the critical habitat designations contains an area that is approximately the size of Texas rather than identifying specific areas that require protection. Moreover, NMFS admitted it could not identify the specific areas that contain the essential sea ice features. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,245 (explaining that the geographic locations of the species' essential sea ice habitat "vary from year to year or even from day to day"). Additionally, awareness of these species and their habitat requirements already exists as a consequence of the 2012 listings of the species as well as the protections imposed by the Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.*

84.     Thus, the critical habitat designated for the ringed seal and the bearded seal is redundant and unnecessary. As NMFS acknowledged, the habitat of both species will

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                          Page 26 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 26 of 37

be protected under the Section 7 consultation process without critical habitat based on the "jeopardy" standard.

85. NMFS acted arbitrarily and capriciously and abused its discretion in concluding that special management considerations or protection are required to protect sea ice essential habitat features without providing a legitimate basis for such a finding or explaining how the designation of critical habitat would actually protect those features. In fact, in both critical habitat rules, NMFS acknowledged that the critical habitat designations will provide very little, if any, additional protection to the species' habitat.

### Fifth Claim for Relief

**(Failure to Analyze Whether Critical Habitat Designation Is Prudent)**

86. Paragraphs 1 through 85 are realleged as if fully set forth and incorporated herein by reference.

87. Critical habitat must be designated for a species at the time of listing only when it is prudent to do so. *See* 16 U.S.C. § 1533(a)(3)(A); 50 C.F.R. § 424.12(a). As NMFS explained in a recent rulemaking, in imposing this limitation, "Congress recognized that not all listed species would be conserved by, or benefit from, the designation of critical habitat." *Regulations for Listing Species and Designating Critical Habitat*, 84 Fed. Reg. 45,020, 45,040 (Aug. 27, 2019). Thus, the focus of the "prudency" determination is the extent to which the critical habitat designation will actually provide conservation benefits to the species concerned.

*State of Alaska v. National Marine Fisheries Service*      Case No. _____
Complaint for Declaratory and Injunctive Relief      Page 27 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 27 of 37

88. NMFS's regulation governing "prudency" determinations, 50 C.F.R. § 424.12(a)(1), specifies different circumstances in which the designation of critical habitat would not be prudent. These include the following:

(1) Threats to the species' habitat stem solely from causes that cannot be addressed through management actions resulting from consultations under section 7(a)(2) of the Act. 50 C.F.R. § 424.12(a)(1)(ii).

(2) Areas within the jurisdiction of the United States provide no more than negligible conservation value, if any, for a species occurring primarily outside the jurisdiction of the United States. 50 C.F.R. § 424.12(a)(1)(iii).

(3) No areas meet the definition of critical habitat. 50 C.F.R. § 424.12(a)(1)(iv).

89. Various persons commenting on the proposed critical habitat rules contended that the designation of critical habitat for the ringed seal and bearded seal would not be prudent. However, NMFS failed to address in detail the circumstances supporting a "not prudent" determination, as set forth in 50 C.F.R. § 424.12(a), and failed to make specific prudency determinations in the final critical habitat rules for the seals. The agency instead discussed this issue in responding to comments on the proposed rule and improperly dismissed it. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,279; Bearded Seal CH Rule, 87 Fed. Reg. 19,221.

90. 50 C.F.R. § 424.12(a)(1)(ii) applies in this case. NMFS determined that future federal actions that may trigger consultation under ESA Section 7(a)(2) based on their potential to affect one or more of the seals' essential habitat features would also trigger Section 7 consultation under the "jeopardy" standard based on their impacts to the

*State of Alaska v. National Marine Fisheries Service*    Case No. _____
Complaint for Declaratory and Injunctive Relief    Page 28 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 28 of 37

species.  *See* NMFS, *RIR/Section 4(b)(2) Preparatory Assessment/FRFA of Critical Habitat Designation for the Arctic Ringed Seal* 6-1, 6-2, 6-8, 8-1 (Nov. 2021) ("Ringed Seal Final Impact Analysis Report"); NMFS, *RIR/Section 4(b)(2) Preparatory Assessment/FRFA of Critical Habitat Designation for the Beringia Distinct Population Segment (DPS) of the Bearded Seal* 6-1, 6-2, 6-8, 8-1 (Nov. 2021) ("Bearded Seal Final Impact Analysis Report").  NMFS thus found that even with critical habitat designated, no additional project modifications or other conservation measures will be imposed through the Section 7(a)(2) consultation process. Thus, no additional protection is provided to the species by designating critical habitat in this case. Indeed, if that were not the case, there would be significant incremental economic costs resulting from the designation due to management actions imposed to protect the critical habitat.

91.     50 C.F.R. § 424.12(a)(1)(iii) is also applicable for similar reasons. The Arctic ringed seal is a common species with a circumpolar distribution extending throughout the Arctic region. The species' total population exceeds 2 million seals and may be much greater. The ringed seal's geographic range truly spans the globe, as depicted in NMFS's proposed listing rule. *Proposed Threatened Status for Subspecies of the Ringed Seal*, 75 Fed. Reg. 77,476, 77,479 (Dec. 10, 2010). Its range within the jurisdiction of the United States—and the critical habitat designated for the species—is a small percentage of the species' total geographic range; therefore, the species occurs primarily outside the jurisdiction of the United States.

92.     The bearded seal also has an extensive circumpolar range south of 85° North latitude that extends along the northern Russian coast eastward across Alaska to

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 29 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 29 of 37

the central Canadian coast and as far south as the Bering Sea. This entire range is considered to be occupied by the species. Thus, a significant portion of the bearded seal's population and its geographic range lies outside of the critical habitat NMFS designated for the species; therefore, the species occurs primarily outside the jurisdiction of the United States.

93. According to NMFS, the critical habitat designated within the jurisdiction of the United States provides negligible conservation value. As alleged above, NMFS has acknowledged that the designation will not result in additional management actions beyond those that will result under the Section 7 jeopardy standard due to the species' listing. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,246, 19,271; Bearded Seal CH Rule, 87 Fed. Reg. 19,192-93, 19,214; Bearded Seal Final Impact Analysis Report 6-1, 6-2, 6- 8, 8-1; Ringed Seal Final Impact Analysis Report 6-1, 6-2, 6-8, 8-1.

94. Given the large populations of ringed seals and bearded seals in areas outside the jurisdiction of the United States, the enormous amount of habitat for these species outside the jurisdiction of the United States, and NMFS's acknowledgement that the designation of critical habitat will provide little, if any, additional protection, it was not prudent to designate critical habitat.

95. Finally, the "specific areas" that were designated as critical habitat for the ringed seal and the bearded seal do not meet the definition of critical habitat. Both seal species are common in the Arctic Basin and adjoining seas, and have vast ranges that contain the essential habitat features described by NMFS. These areas, and the features they contain, are not essential – i.e., indispensable – to the conservation of the two seal

*State of Alaska v. National Marine Fisheries Service*  Case No. _____
Complaint for Declaratory and Injunctive Relief  Page 30 of 36
Case 3:23-cv-00032-SLG  Document 1  Filed 02/15/23  Page 30 of 37

species. The areas do not meet the definition of critical habitat and are not eligible to be designated as critical habitat. Therefore, it was not prudent to designate critical habitat. 50 C.F.R. § 424.12(a)(1)(iv).

96. In sum, it was not prudent to designate critical habitat because critical habitat provides only negligible conservation benefits to each of the seal species. NMFS has acknowledged that the designation of critical habitat will not result in project modifications or other protections to the essential habitat features beyond those imposed due to the species' listings. The agency stated, for example, that "we have not identified a circumstance in which this critical habitat designation would be likely to result in additional requests for project modifications in section 7 consultations." Bearded Seal CH Rule, 87 Fed. Reg. 19,218; see also Ringed Seal CH Rule, 19,270. It is not prudent to designate critical habitat when it provides little to no conservation benefit and, moreover, critical habitat cannot even be identified and described with reasonable specificity, as is the case here. Therefore, NMFS acted unlawfully and abused its discretion by failing to analyze whether it was prudent to designate critical habitat.

## **Sixth Claim for Relief**

### **(Violation of ESA Section 4(b)(2))**

97. Paragraphs 1 through 96 are realleged as if fully set forth and incorporated herein by reference.

98. ESA Section 4(b)(2) requires that NMFS "tak[e] into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat" and authorizes to NMFS to "exclude any

*State of Alaska v. National Marine Fisheries Service*        Case No. _____
Complaint for Declaratory and Injunctive Relief                    Page 31 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 31 of 37

area from critical habitat if [it] determines that the benefits of such exclusion outweigh the benefits of specifying such area." 16 U.S.C. § 1533(b)(2).

99.     The Supreme Court recently explained that Section 4(b)(2) "requires the Secretary to consider economic impact and relative benefits before deciding whether to exclude an area from critical habitat or to proceed with designation." *Weyerhaeuser*, 139 S. Ct. at 371. Thus, NMFS must consider the economic and other impacts as well as the benefits that may result from designating particular areas as critical habitat prior to completing the designation of critical habitat. *Id.*

100.     In designating critical habitat for the ringed seal and the bearded seal, NMFS erred both in its analysis of the economic impacts of the bearded and ringed seals' critical habitat designations and in determining whether to exclude any particular areas from the final designations.

101.     NMFS was unable to meaningfully consider the economic impacts from the critical habitat designations because the 160-million-acre designations are simply too massive.  Instead, the agency improperly assumed that no project modifications or other requirements would result from activities taking place within critical habitat because adverse impacts to the species' habitat would be addressed under the Section 7 "jeopardy" analysis. NMFS stated, for example, that "we have not identified a circumstance in which this critical habitat designation would be likely to result in additional requests for project modifications in section 7 consultations." Bearded Seal CH Rule, 87 Fed. Reg. 19,218; *see also* Ringed Seal CH Rule, 19,270. At bottom, NMFS's decision to designate an unreasonably large area as critical habitat prevented proper

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                    Page 32 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 32 of 37

consideration of the impacts of critical habitat on activities occurring in *particular areas*, as Section 4(b)(2) requires.

102.    For example, NMFS did not adequately address the Alaska Department of Natural Resources' ("ADNR's") comment that the designation of critical habitat would disproportionately impact Alaska Natives, the North Slope Borough, coastal communities in western and northern Alaska, and municipal and village activities in these regions. Instead, NMFS assumed that these communities would not be affected by the designation because the conservation value of the critical habitat is negligible and its presence will not result in restrictions on their activities.

103.    In addition, NMFS erroneously believed that it had discretion to refuse to consider requests to exclude areas raised by commenters, including the State of Alaska and local governments.  NMFS stated that it is "not exercising [its] discretion to further consider and weigh the benefits of excluding any particular area based on economic impacts against the benefits of designation." Ringed Seal CH Rule, 87 Fed. Reg. at 19,246, 19,278; Bearded Seal CH Rule, 87 Fed. Reg. at 19,194, 19,220. This was unlawful. The Supreme Court has rejected the argument that the agency has discretion to refuse to analyze whether to exclude an area from a critical habitat designation. *See Weyerhaeuser*, 139 S. Ct. at 371 ("Section 4(b)(2) . . . directs the Secretary to consider the economic and other impacts of designation when making his exclusion decisions.").

104.    The State of Alaska requested that a 20-mile buffer area be excluded around communities on the northern and northwestern coast of Alaska and along the

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief          Page 33 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 33 of 37

Beaufort Sea coast, where the economic impacts of designation are likely to be the greatest. *See* State of Alaska, Comment Letter on Designation of Critical Habitat for the Beringia Distinct Population Segment of the Bearded Seal and Designation of Critical Habitat for the Arctic Subspecies of the Ringed Seal 19 (Apr. 8, 2021); Ringed Seal CH Rule, 87 Fed. Reg. 19,287; Bearded Seal CH Rule, 87 Fed. Reg. 19,220.

105.    The North Slope Borough also submitted comments regarding the economic impacts of the proposed critical habitat designation and requested exclusion of a 10-mile buffer zone around all North Slope villages, all lands conveyed to the Borough and Alaska Native Corporations, and areas around oil and gas development. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,278; Bearded Seal CH Rule, 87 Fed. Reg. 19,220.

106.    NMFS rejected these requests primarily because the agency determined that no significant economic impacts would be caused by the designation of critical habitat for either species, explaining that federal authorizations, permits, and funding are already subject to Section 7 consultation because the two seal species are listed under the ESA. For example, NMFS stated: "we do not expect that the additional need to consult on the critical habitat would result in additional or novel project modifications beyond those that result from consultations that are already required due to the threatened status of the species and the [Marine Mammal Protection Act]." Ringed Seal CH Rule 87 Fed. Reg. 19,278; *see also* Bearded Seal CH Rule, 87 Fed. Reg. 19,220 (identical language).

107.    The other benefits of designating critical habitat identified by NMFS are irrelevant and improper. These include purported informational benefits about other species found in the Arctic region and known to be protected already under the Marine

State of Alaska v. National Marine Fisheries Service          Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 34 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 34 of 37

Mammal Protection Act and as listed species under the ESA, such as the polar bear. *See* Ringed Seal CH Rule, 87 Fed. Reg. 19,245-46; Bearded Seal CH Rule, 87 Fed. Reg. 19,193. The purpose of critical habitat is to protect the essential habitat features that are indispensable to the conservation of the species concerned, and not to provide benefits for other wildlife species.

108.    NMFS abused its discretion and acted arbitrarily and unlawfully by designating critical habitat for the seal species without taking into consideration the economic and other impacts of designating particular areas as critical habitat. If critical habitat designation will have minimal impact on human activities, including oil and gas exploration, development and production, and marine transportation, then the critical habitat will provide negligible conservation value and should not be designated.

109.    NMFS abused its discretion and acted arbitrarily and unlawfully by designating critical habitat for the seal species without first comparing the benefits of excluding the specific areas raised in comments by Alaska, the North Slope Borough, and others with the benefits of designating those areas as critical habitat.

## PRAYER FOR RELIEF

The State of Alaska respectfully requests that this Court enter a judgment in its favor granting the following relief:

A.    Find and declare that NMFS violated the ESA and the APA in designating critical habitat for the Arctic subspecies of the ringed seal;

B.    Find and declare that NMFS violated the ESA and the APA in designating critical habitat for the Beringia DPS of the bearded seal;

*State of Alaska v. National Marine Fisheries Service*    Case No. _____
Complaint for Declaratory and Injunctive Relief    Page 35 of 36
Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 35 of 37

C. Hold unlawful and set aside the critical habitat designated for the Arctic subspecies of the ringed seal;

D. Hold unlawful and set aside the critical habitat designated for the Beringia DPS of the bearded seal;

E. Enjoin NMFS from taking any action to apply or enforce the critical habitat designated for the Arctic subspecies of the ringed seal, including during Section 7 consultation;

F. Enjoin NMFS from taking any action to apply or enforce the critical habitat designated for the Beringia DPS of the bearded seal, including during Section 7 consultation;

G. Award Plaintiffs their costs of litigation, including reasonable attorney fees pursuant to the ESA, 16 U.S.C. § 1540(g)(4), or, in the alternative, the Equal Access to Justice Act, 28 U.S.C. § 2412; and

H. Provide the State of Alaska such other and further relief as the Court deems just and proper based on NMFS's violations of the ESA and its implementing regulations.

DATED February 15, 2023.


TREG TAYLOR
ATTORNEY GENERAL

/s/ *Ronald W. Opsahl*
Ronald W. Opsahl
(Alaska Bar No. 2108081)
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200

*State of Alaska v. National Marine Fisheries Service*     Case No. _____
Complaint for Declaratory and Injunctive Relief                    Page 36 of 36

Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 36 of 37

Anchorage, Alaska 99501
Phone:  (907) 269-5232
Facsimile:  (907) 276-3697
Email: ron.opsahl@alaska.gov

FENNEMORE CRAIG P.C.
Norman D. James (AZ Bar No. 006901)
Tyler D. Carlton (AZ Bar No.035275)
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Phone: (602) 916-5000
Facsimile: (602) 916-5546
Email:  njames@fennemorelaw.com
        tcarlton@fennemorelaw.com
(*pro hac vice applications forthcoming*)

Attorneys for Plaintiffs

*State of Alaska v. National Marine Fisheries Service*          Case No. _____
Complaint for Declaratory and Injunctive Relief                              Page 37 of 36

Case 3:23-cv-00032-SLG   Document 1   Filed 02/15/23   Page 37 of 37