Kristen Monsell (*Pro hac vice forthcoming*)
Emily Jeffers (*Pro hac vice forthcoming*)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Ste. 800
Oakland, CA 94605
Phone: (510) 844-7137
Facsimile: (510) 844-7150
Email: kmonsell@biologicaldiversity.org
      ejeffers@biologicaldiversity.org

*Attorneys for Proposed Intervenor-Defendant Center for Biological Diversity*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| State of Alaska<br><br>Plaintiffs,<br><br>v.<br><br>National Marine Fisheries Service,<br><br>Defendant. | Case No. 3:23-cv-00032-SLG<br><br>**DECLARATION OF SHAYE WOLF** |

I, Shaye Wolf, declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge. If called as a witness in these proceedings, I could and would testify competently to these facts.

2. I received a B.S. in Biology at Yale University, an M.S. in Ocean Sciences at the University of California, Santa Cruz, and a Ph. D. in Ecology and Evolutionary

*State of Alaska v. Nat'l Marine Fisheries Serv.*,
Case 3:23-cv-00032-SLG
1
Case 3:23-cv-00032-SLG   Document 12-3   Filed 04/25/23   Page 1 of 9

Biology from the University of California, Santa Cruz. My doctoral work focused on understanding and forecasting the effects of climate change on wildlife species. My dissertation examined the impacts of ocean climate change on seabird populations along the west coast of the United States, which resulted in publications in Global Change Biology and Ecology.

3. I am the Climate Science Director for the Center for Biological Diversity ("Center") in the Climate Law Institute, where I have worked for more than 15 years. I am familiar with the history, structure, and activities of the Center.

4. The Center is a non-profit environmental organization dedicated to preserving, protecting, and restoring biodiversity, native species, ecosystems, and public lands. The Center has over 89,000 members, each of whom shares a commitment to support the Center's work conserving marine and terrestrial biodiversity and ecosystems. The Center believes that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked. Combining conservation biology with litigation, policy advocacy, and an innovative strategic vision, the Center is working to secure a future for animals and plants hovering on the brink of extinction, for the wilderness they need to survive, and, by extension, for the spiritual welfare of generations to come.

5. The Center carries out its conservation efforts on behalf of these members. The Center's members and staff, including myself, rely on the Center to represent our interests in the preservation of imperiled species and habitats such as those in the Arctic and subarctic oceans. The Center's members seek to observe and enjoy marine wildlife,

*State of Alaska v. Nat'l Marine Fisheries Serv.*,
Case 3:23-cv-00032-SLG 2
Case 3:23-cv-00032-SLG   Document 12-3   Filed 04/25/23   Page 2 of 9

including Arctic ringed seals and bearded seals. The Center's members use waters off Alaska, including the Bering Sea, Chukchi Sea, Beaufort Sea, and surrounding coastal areas, to photograph, study, and view ringed seals and other species, and engage in other recreational pursuits. Our members have spiritual, scientific, professional, aesthetic, and/or recreational interests in ringed seals and other species.

6. The Center has several different practice areas and programs. One such area is climate change science, law, and policy. Our work in this area is coordinated by the "Climate Law Institute," (formerly, our "Climate, Air, and Energy Program") an internal institution with the primary mission of curbing climate change and sharply limiting its damaging effects on endangered species and their habitats.

7. One of the Climate Law Institute's core strategies is to protect species most imperiled by climate change and work to encourage management agencies such as the Department of Commerce and the National Marine Fisheries Service ("NMFS") to improve management for these species and take global warming impacts into account when making decisions affecting species. As part of these efforts the Center has filed numerous Endangered Species Act petitions for species threatened by climate change, including the polar bear, the Pacific walrus, and four species of ice seals—ribbon, spotted, bearded, and ringed. When necessary, we have followed up these petitions with legal actions to require federal agencies to fulfill their legal duties under the Endangered Species Act. Advocating for the protection of the ringed seal and the bearded seal has been part of these efforts.

8. I am personally responsible for running many of our activities concerning climate change and its impacts on wildlife, including all scientific activities related to the ringed seal and the bearded seal. One of my primary areas of expertise is the impacts of climate change on the Arctic and sea-ice-dependent wildlife including the ringed seal and the bearded seal. In my capacity at the Center, I am familiar with all aspects of the Center's activities and organizational interests related to protection of ringed seals, bearded seals, and their habitat.

9. In my role as Climate Science Director, my work focuses on gaining protections to benefit wildlife species and ecosystems threatened by climate change. Because the U.S. Endangered Species Act provides many important protections for climate-change threatened species and their habitat, I have written or co-authored seven Endangered Species Act petitions, based on extensive review of the scientific literature, to protect species threatened by climate change, including petitions for five Arctic marine mammal species (Pacific walrus, bearded seal, ringed seal, spotted seal, and ribbon seal), high-elevation species (American pika and San Bernardino flying squirrel), 83 coral species,
and eight coral reef-dependent fish.

10. Because climate change is occurring so rapidly in the Arctic, one of my main areas of interest and expertise is the impacts of climate change on Arctic ecosystems and sea-ice dependent species, such as the ringed seal and bearded seal. For example, in 2010, I co-authored a report that reviews the scientific literature on the profound climatic

changes occurring in the Arctic and how these changes are impacting Arctic wildlife, including the ringed seal and bearded seal. I regularly communicate with scientists that research Arctic climate change to discuss and understand their research findings, regularly attend scientific conference panels and webinars on Arctic climate change, and have contributed to climate change adaptation and mitigation plans related to Arctic climate change and its impacts on wildlife.

11. In May 2008, I authored the petition for the ringed seal, bearded seal, and one other ice-dependent Arctic seal that are jeopardized by the rapid loss and thinning of the sea-ice habitat they need for essential activities including rearing pups, molting, and resting. Our petition to list the ringed seal and bearded seal contained detailed scientific data and supporting information demonstrating that the species qualified for listing under the Endangered Species Act.

12. Subsequent to the filing of the petition, we submitted six detailed follow-up comment letters and supporting information to the relevant federal agencies during the listing process, including three letters in November 2008, April 2009, and May 2010, respectively, in response to the 90-day finding, one comment letter in March 2011 on the proposed listing rule, one comment letter in May 2012 on the Special Independent Peer Review of the Status Review Report, one comment letter in February 2013 on critical habitat designation in response to the final listing rule, and one comment letter in March 2015 in response to the proposed critical habitat designation.

13. We submitted a formal notice of intent to sue when NMFS failed to respond to our petition within the timeframe mandated by the Endangered Species Act. After the Center filed suit, NMFS agreed to decide on protecting ringed and bearded seals by November 1, 2010. As relevant here, in December 2010 NMFS proposed to list the Arctic subspecies of the ringed seal and the Beringia distinct population segment ("DPS") of the bearded seal as threatened. The Center submitted comments supporting the proposed rules. In December 2011, with ringed and bearded seals slated to be listed as threatened that week, NMFS announced it would delay Endangered Species Act protections for these seals for another six months. In September 2012, after NMFS had again missed its deadline to list, the Center sued the agency for illegal delay. Finally, in December 2012, NMFS finalized the rules listing the Arctic ringed seal and bearded seal Beringia DPS as threatened.

14. Following the listing, in 2013, Plaintiff and others filed lawsuits in the District of Alaska challenging NMFS's decision to list the bearded seal. The Center sought and was granted intervention in that case and participated in the lawsuit both in district court and on appeal to the Ninth Circuit. The district court ruled for the plaintiffs and vacated the listing, but the Ninth Circuit reversed, holding that NMFS's finding that the bearded seal Beringia DPS was likely to become endangered within the foreseeable future was reasonable and supported by the record.

15. In 2014 and 2015, Plaintiff and others filed lawsuits challenging NMFS's decision to list the ringed seal. The Center also sought and was granted intervention in

that case, and also participated in the lawsuit both in district court and on appeal to the Ninth Circuit. As with the bearded seal case, the district court ruled for the plaintiffs and vacated the listing, but the Ninth Circuit reversed, upholding NMFS's decision to list the Arctic ringed seal as a threatened species.

16. Following the Ninth Circuit's decisions in these cases, in March 2019, Plaintiff filed a petition to remove the Arctic ringed seal from the list of species protected by the Endangered Species Act. NMFS denied the petition in November 2020, and Plaintiff filed a lawsuit challenging that denial in the District of Alaska in November 2022. The Center sought and was granted intervention in that case. In granting the Center's motion to intervene, the court noted that the Center played an integral role in the listing of the Arctic ringed seal.

17. Also after the Ninth Circuit upheld NMFS's decisions to list the Arctic ringed seal and the bearded seal Beringia DPS, and in light of NMFS's failure to designate critical habitat for these seals within the timeline mandated by the Endangered Species Act, the Center sued the agency to force it to do so. The Center then entered into a settlement agreement with the agency, pursuant to which it issued a revised proposed rule to designate critical habitat for the Arctic ringed seal and a revised proposed rule to designate critical habitat for the bearded seal Beringia DPS in January 2021. The Center submitted detailed comments on both proposed critical habitat designations.

18. The Center's members derive great professional, scientific, recreational, aesthetic, and spiritual benefit from the existence of ringed seals and bearded seals. Our

members also derive great benefit from the existence and persistence of their habitat. Center members travel to the Arctic specifically to study, observe, photograph, and enjoy ringed seals, bearded seals, and other Arctic species in their sea-ice environment. They will continue to do so as long as the sea ice persists and there are ringed and bearded seals to observe.

19. However, our members are concerned that continued climate change, combined with increased industrialization of the Arctic and subarctic oceans, threatens the future of the ringed seal and the bearded seal. Extensive information collected and analyzed by scientists around the world demonstrates unequivocally that climate change is altering the Arctic and subarctic ocean habitat of ringed seals and bearded seals, and posing a fundamental threat to their continued survival.

20. If the ringed seal and bearded seal were stripped of the protections afforded by critical habitat designations, the Center and its members would be harmed. Critical habitat designations provide important protections beyond listing alone. For example, all federal agencies are required to consult with NMFS to ensure any action they authorize, fund, or carry out is not likely to destroy or adversely modify these habitats. And studies show that species with critical habitat are more than twice as likely to be in recovery than those without it. As such, these critical habitat designations provide ringed seals and bearded seals with a greater chance of persisting in the wild. This gives the Center's members a greater chance to continue to observe, enjoy, and appreciate these species and their habitats in the Arctic and subarctic oceans.

21. Our members' professional, scientific, recreational, aesthetic, and spiritual interest in ringed and bearded seals and their habitat would therefore be harmed if the Plaintiff receives the relief they request—vacatur of NMFS's critical habitat designation for the Arctic ringed seal and/or vacatur of NMFS's critical habitat designation for the bearded seal Beringia DPS—in this lawsuit. Such relief would also call into question the science underlying NMFS's decision to designate these critical habitats; as well as NMFS's analysis of how climate change threatens species that depend on sea ice to survive. The designation of critical habitat under the Endangered Species Act provides important protections that can help reduce greenhouse gas emissions that are the principal threat to the ringed and bearded seal. Without these protections, there would be reduced ability to help stem the rapid melting of the seals' sea-ice habitat. Ringed and bearded seals could be exposed to an increasing number of other threats, including oil and gas development and increased shipping, that would increase their probability of extinction. The Center's members would suffer a professional, aesthetic, spiritual, and recreational loss from their diminishing ability to observe and appreciate this species in the wild.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on 21 of April, 2023, in Kensington, California,

*Shaye Wolf*
———————————
Shaye Wolf

*State of Alaska v. Nat'l Marine Fisheries Serv.*,
Case 3:23-cv-00032-SLG  9
Case 3:23-cv-00032-SLG   Document 12-3   Filed 04/25/23   Page 9 of 9