## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

        Plaintiff,

   v.

NATIONAL MARINE FISHERIES
SERVICE,

        Defendant,

   and

CENTER FOR BIOLOGICAL
DIVERSITY,

        Intervenor-Defendant.

Case No. 3:23-cv-00032-SLG

## DECISION & ORDER

The State of Alaska ("State") challenges Defendant National Marine
Fisheries Service's ("NMFS" or the "Service") final rules designating critical
habitats for the Beringia distinct population segment ("DPS") of the bearded seal,
*Erignathus barbatus nauticus*,[1] and for the Arctic ringed seal, *Pusa hispida
hispida*.[2] The State filed an opening brief at Docket 27. NMFS filed a brief in

---

[1] *See* AR_NMFS4209 (final rule designating critical habitat for the bearded seal of the Beringia
DPS); Endangered and Threatened Species; Designation of Critical Habitat for the Beringia
Distinct Population Segment of the Bearded Seal, 87 Fed. Reg. 19180 (Apr. 1, 2022).

[2] *See* AR_NMFS4260 (final rule designating critical habitat for the Arctic ringed seal);
Endangered and Threatened Species; Designation of Critical Habitat for the Arctic Subspecies
of the Ringed Seal, 87 Fed. Reg. 19232 (Apr. 1, 2022).

opposition at Docket 31.  The Center for Biological Diversity ("CBD"), which was permitted to intervene,[3] also filed a brief in opposition at Docket 30.  The State filed a reply at Docket 33.

Oral argument on the merits was held on April 25, 2024.[4]

## BACKGROUND

### I.    Description of the Seals

Bearded seals of the Beringia DPS ("bearded seals") are "the largest of the northern ice-associated seals" and "inhabit seasonally ice-covered waters of the Bering, Chukchi, Beaufort, and East Siberian seas."[5]  Because they "primarily feed on organisms on or near the seafloor . . . that are more numerous in shallow water where light can reach the sea bottom," "their effective habitat is generally restricted to areas where seasonal ice occurs over relatively shallow waters, typically less than 200 [meters]."[6]  Bearded seals use sea ice as protection from predators, "for whelping and nursing of pups, pup maturation, and molting (shedding and regrowing hair and outer skin layers), as well as for resting."[7]

---

[3] *See* Docket 21.

[4] Docket 38.

[5] AR_NMFS4210; *see also* AR_REF1781 (map of global distribution of bearded seals, with the bearded seal of the Beringia DPS denoted in orange).  References to the administrative record, which was filed conventionally in this case, are denoted in this order with the prefix "AR_" as seen in this footnote.  *See* Docket 25.

[6] AR_NMFS4210.

[7] AR_NMFS4210.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 2 of 45

Arctic ringed seals ("ringed seals") are "the smallest of the northern seals" and are circumpolar, "found throughout ice-covered waters of the Arctic Ocean Basin and southward into adjacent seas, including the Bering, Chukchi, and Beaufort seas off Alaska's coast."[8] They are "adapted to remaining in heavily ice-covered areas throughout the fall, winter, and spring by using the stout claws on their foreflippers to maintain breathing holes in the ice."[9] Ringed seals also utilize sea ice for "resting, whelping . . . , nursing, and molting."[10] During the winter through early spring, ringed seals "rest primarily in subnivean lairs (snow caves on top of the ice)," which is known as the "subnivean period."[11] Ringed seals occupy subnivean lairs "for resting, whelping, and nursing pups in areas of annual landfast ice . . . and stable pack ice."[12] These lairs "provide protection from cold and predators throughout the winter months, but they are especially important for protecting newborn ringed seals," which "start life with minimal tolerance for immersion in cold water."[13]

---

[8] AR_NMFS4261; *see also* AR_REF2037 (map of global distribution of ringed seals, with the Arctic ringed seal denoted in orange).

[9] AR_NMFS4261.

[10] AR_NMFS4261.

[11] AR_NMFS4261.

[12] AR_NMFS4262.

[13] AR_NMFS4262.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 3 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 3 of 45

## II.     Endangered Species Act

In 2012, NMFS listed both species of seals as threatened pursuant to the Endangered Species Act ("ESA"), codified at 16 U.S.C. § 1531 *et seq.*[14]  Under the ESA, the Secretary of Commerce ("Secretary") determines whether to list any species as endangered or threatened pursuant to the criteria set forth in 16 U.S.C. § 1533(a)(1).[15]  When doing so, the Secretary

> shall make determinations . . . solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas.[16]

---

[14] Endangered and Threatened Species; Threatened Status for the Beringia and Okhotsk Distinct Population Segments of the Erignathus barbatus nauticus Subspecies of the Bearded Seal, 77 Fed. Reg. 76740 (Dec. 28, 2012) (reproduced at AR_NMFS0079); Endangered and Threatened Species; Threatened Status for the Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal and Endangered Status for the Ladoga Subspecies of the Ringed Seal, 77 Fed. Reg. 76706 (Dec. 28, 2012) (reproduced at AR_NMFS0045).

[15] 16 U.S.C. § 1533(a)(1).  In this case, the term "Secretary" refers to the Secretary of Commerce, as NMFS "is an office of the National Oceanic and Atmospheric Administration within the Department of Commerce."  *See* 16 U.S.C. § 1532(15) ("The term 'Secretary' means, except as otherwise herein provided, the Secretary of the Interior or the Secretary of Commerce as program responsibilities are vested . . . ."); *see also* About Us, NOAA Fisheries, https://perma.cc/M2CW-FM8W (last visited July 10, 2024).

[16] 16 U.S.C. § 1533(b)(1)(A).  Furthermore, the Secretary "shall give consideration to species which have been—"

> (i) designated as requiring protection from unrestricted commerce by any foreign nation, or pursuant to any international agreement; or

> (ii) identified as in danger of extinction, or likely to become so within the foreseeable future, by any State agency or by any agency of a foreign nation that is responsible for the conservation of fish or wildlife or plants.

16 U.S.C. § 1533(b)(1)(B).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 4 of 45

At the same time the Secretary makes a determination to list a species as endangered or threatened, the Secretary must also, "to the maximum extent prudent and determinable . . . , designate any habitat of such species which is then considered to be critical habitat."[17]  However, if the "critical habitat of such species is not then determinable," the Secretary may delay the designation.[18]

The ESA defines "critical habitat" as:

> (i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of [16 U.S.C. § 1533], on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and

> (ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of [16 U.S.C. § 1533], upon a determination by the Secretary that such areas are essential for the conservation of the species.[19]

The ESA directs the Secretary to designate critical habitat "on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat."[20]  While the Secretary "may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat," he may not do

---

[17] 16 U.S.C. § 1533(a)(3)(A)(i).

[18] 16 U.S.C. § 1533(b)(6)(C)(ii).

[19] 16 U.S.C. § 1532(5)(A).

[20] 16 U.S.C. § 1533(b)(2).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 5 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 5 of 45

so if "he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned."[21]   The ESA further provides that, "[e]xcept in those circumstances determined by the Secretary, critical habitat shall not include the entire geographical area which can be occupied by the threatened or endangered species."[22]

As a result of listing a species and designating critical habitat, the ESA requires each federal agency to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [the critical] habitat of such species," unless the agency has been granted an exemption.[23]   In the instant case, a federal agency would meet that requirement by consulting with NMFS,[24] a process commonly referred to as the ESA § 7 consultation.[25]

---

[21] *Id.*

[22] 16 U.S.C. § 1532(5)(C).

[23] 16 U.S.C. § 1536(a)(2).  In so doing, "each agency shall use the best scientific and commercial data available."  *Id.*  The process for granting an exemption is contained in 16 U.S.C. § 1536(h).

[24] Federal agencies consult with either the U.S. Fish and Wildlife Service ("FWS") or NMFS, depending on the species potentially affected.  *See* 50 C.F.R. § 402.13 (describing informal consultation with "the Service"); 50 C.F.R. § 402.14 (describing formal consultation with "the Service"); 50 C.F.R. § 402.02 (defining "Service" to mean "the U.S. Fish and Wildlife Service or the National Marine Fisheries Service, as appropriate").

[25] When the ESA was enacted, the consultation requirement was contained in § 7 of the statute. *See* Endangered Species Act of 1973, Pub. L. No. 93-205, § 7, 87 Stat. 884, 892 (1973)

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 6 of 45

### III. Bearded and Ringed Seal Critical Habitat Designations

NMFS considered the following in designating the critical habitats for the bearded and ringed seals: physical and biological features essential to the conservation of the species; specific areas containing the essential features; special management considerations or protection; any unoccupied areas that are essential to the species' conservation; areas owned or controlled by the Department of Defense ("DOD"); and impacts pursuant to ESA § 4(b)(2), codified at 16 U.S.C. § 1533(b)(2), which requires the Secretary to consider economic, national security, and other relevant impacts when designating critical habitat.[26]

For both seal species, "[b]ased on the best scientific information available," NMFS first identified the "physical and biological features that are essential to the conservation of [the species] within U.S. waters occupied by the species."[27] For the bearded seal, NMFS identified the following essential physical and biological features: (1) sea ice habitat suitable for whelping and nursing; (2) sea ice habitat suitable as a platform for molting; and (3) primary prey resources to support bearded seals.[28] For the ringed seal, NMFS identified the essential features as: (1) snow-covered sea ice habitat suitable for the formation and maintenance of

---

(codified at 16 U.S.C. § 1536(a)(1), (2)).

[26] *See* AR_NMFS4213, AR_NMFS4215, AR_NMFS4218, AR_NMFS4220–21; AR_NMFS4264, AR_NMFS4267, AR_NMFS4269, AR_NMFS4272.

[27] AR_NMFS4213; AR_NMFS4264.

[28] AR_NMFS4213–15.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 7 of 45

subnivean birth lairs used for sheltering pups during whelping and nursing; (2) sea ice habitat suitable as a platform for basking and molting; and (3) primary prey resources to support ringed seals.[29]

NMFS then remarked that, "[t]o determine which areas qualify as critical habitat within the geographical area occupied by the species, [NMFS is] required to identify 'specific areas' that contain one or more of the physical or biological features essential to the conservation of the species (and that may require special management considerations or protection . . . )."[30] However, for both the bearded and the ringed seals, NMFS explained that "the essential features of . . . [the] critical habitat[s], in particular the sea ice essential features, are dynamic," and "their locations are variable on both spatial and temporal scales."[31] Stated differently, NMFS found that the "specific geographic locations of essential sea ice habitat used by" both bearded and ringed seals "vary from year to year, or even day to day," depending on various factors such as time of year, local weather, and oceanographic conditions.[32] As a result, NMFS found that "[t]he dynamic nature of sea ice and the spatial and temporal variations in sea ice cover constrain [its] ability to map precisely the specific geographic locations where the sea ice

---

[29] AR_NMFS4264–67.

[30] AR_NMFS4215 (citing 50 C.F.R. § 424.12(b)(1)(iii)); AR_NMFS4267 (citing to the same).

[31] AR_NMFS4215; AR_NMFS4267.

[32] AR_NMFS4215; AR_NMFS4267.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 8 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 8 of 45

essential features occur."[33]   NMFS also noted that, for both seal species, the "primary prey species . . . occur throughout the geographical area occupied by the species."[34]  And while NMFS acknowledged that it could not "designate as critical habitat the entire geographical area occupied by a species," it decided in this case to "designat[e] as critical habitat a single specific area that contains all three of the identified essential features" for each seal species.[35]

NMFS next noted that critical habitat may only be designated in occupied areas "if the area contains one or more essential physical or biological feature[s] that may require special management considerations or protection."[36]  For both bearded and ringed seals, NMFS identified the same "four primary sources of potential threats to one or more of the [essential] habitat features identified": climate change, oil and gas activity, marine shipping and transportation, and commercial fisheries.[37]  NMFS then described how each of these potential threats may impact essential habitat features; for example, it noted that climate change

---

[33] AR_NMFS4215; AR_NMFS4267.

[34] AR_NMFS4218; AR_NMFS4269.

[35] AR_NMFS4218; AR_NMFS4269.

[36] AR_NMFS4218 (first citing 16 U.S.C. § 1532(5)(A)(i); and then citing 50 C.F.R. § 424.12(b)(1)(iv)); AR_NMFS4269 (citing the same).

[37] AR_NMFS4218–20; AR_NMFS4269–72.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 9 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 9 of 45

due to the release of "carbon dioxide and other heat-trapping greenhouse gases (GHGs) into the atmosphere" is a "major contributing factor to . . . loss of sea ice."[38]

NMFS also determined that, because both seal species "are considered to occupy their entire historical range that falls within U.S. jurisdiction, . . . there are no unoccupied areas within U.S. jurisdiction that are essential to their conservation."[39] NMFS additionally concluded that none of the designated critical habitat for either seal species would overlap areas "owned, controlled, or designated for use by [the] DOD" pursuant to the conditions set forth in 16 U.S.C. § 1533(a)(3)(B)(i), and thus the exemptions requested by the DOD were unnecessary.[40]

Finally, in considering economic, national security, and other relevant impacts when designating critical habitat, NMFS concluded that "[t]he primary impacts of a critical habitat designation [for both seal species] arise from the ESA section 7(a)(2) requirement that Federal agencies ensure that their actions are not likely to result in the destruction or adverse modification of critical habitat (*i.e.*, adverse modification standard)."[41] NMFS also determined that the ESA § 7

---

[38] AR_NMFS4218; AR_NMFS4270.

[39] AR_NMFS4220; AR_NMFS4272.

[40] AR_NMFS4220–21; AR_NMFS4272.

[41] NMFS also noted that § 7(a)(2) "contains the overlapping requirement that Federal agencies ensure that their actions are not likely to jeopardize the species' continued existence." AR_NMFS4221; AR_NMFS4273.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 10 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 10 of 45

consultation requirement was "the only regulatory consequence" of the critical habitat designations.[42] NMFS further remarked that "[d]irect economic costs of the critical habitat designation[s] accrue primarily through" the § 7 consultation, which may impact "both administrative costs and costs associated with project modifications."[43] However, based on a 10-year time window, the Service stated it "ha[d] not identified any likely incremental economic impacts associated with project modifications that would be required solely to avoid impacts to [either seal species'] critical habitat," because "section 7 consultations on potential effects to [both seal species] and [the Service's] incidental take authorizations for Arctic activities under section 101(a) of the Marine Mammal Protection Act (MMPA) both typically address habitat-associated effects to the seals even in the absence of a critical habitat designation."[44] Thus, NMFS determined that "the potential economic impacts associated with the critical habitat designation[s] are modest" and "primarily associated with oil and gas activities that may occur in the Beaufort and Chukchi Seas," and, therefore, it would "not [be] exercising [its] discretion to further consider and weigh the benefits of excluding any particular area [from

---

[42] AR_NMFS4222; AR_NMFS4273.

[43] AR_NMFS4222; AR_NMFS4274.

[44] AR_NMFS4222; AR_NMFS4274.  NMFS explained that, while "economic costs of the designation[s] are likely to extend beyond the 10-year timeframe of the analysis, . . . forecasting potential future Federal actions that may require section 7 consultation regarding critical habitat for [both seal species] becomes increasingly speculative beyond the 10-year time window." AR_NMFS4222; AR_NMFS4273.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 11 of 45

critical habitat designation] based on economic impacts against the benefits of designation."[45]  NMFS then considered national security and other relevant impacts for both bearded and ringed seals and decided only to exclude one particular area off of the Beaufort Sea shelf from the ringed seal critical habitat due to national security impacts.[46]

The State initiated this lawsuit in February 2023, challenging the Service's April 2022 final rules, which the State describes as designating "an enormous area . . . exceed[ing] 160 million acres [of water surrounding the Alaskan coast] and approximat[ing] the size of Texas" as critical habitat for bearded and ringed seals.[47] The State asserts that the Service designated a single area containing approximately 174 million acres of critical habitat for the bearded seal and a single area containing approximately 164 million acres of critical habitat for the ringed seal, with significant overlap in the two areas.[48]  Neither NMFS nor CBD (collectively, "Defendants") disputes the State's size estimates of the critical habitats.[49]  The State maintains that "these unprecedented designations" include

---

[45] AR_NMFS4223; AR_NMFS4274.

[46] AR_NMFS4223–24; AR_NMFS4274–78.  The area excluded from the ringed seal critical habitat does not appear to be occupied by bearded seals and is also not included in the bearded seal critical habitat.  *Compare* AR_NMFS4315 (map of ringed seal critical habitat) (reproduced in Appendix 2), *with* AR_REF1781 (map of global distribution of bearded seals) *and* AR_NMFS4259 (map of bearded seal critical habitat) (reproduced in Appendix 1).

[47] Docket 1; Docket 27 at 6 (emphasis omitted).

[48] Docket 33 at 8 (citing AR_NMFS4314–15; AR_NMFS4258–59; AR_PUB14291).

[49] *See generally* Docket 31; Docket 30.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 12 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 12 of 45

"virtually all of the geographic area occupied by each seal within the jurisdiction of the United States" and violate the ESA's requirements for limiting critical habitat to only those "specific areas that are essential to the conservation of the species."[50]

The State's complaint alleges six separate violations of the ESA: (1) failure to designate specific areas as critical habitat; (2) failure to consider all of the species' global habitat; (3) failure to designate specific areas that contain the essential habitat features; (4) failure to explain how the essential habitat features will be protected by the designations; (5) failure to analyze whether each critical habitat designation is prudent; and (6) violation of ESA § 4(b)(2), which requires the agency to take into consideration the economic, national security, and other relevant impacts when designating critical habitat.[51] The State seeks declaratory and injunctive relief, and asks the Court to "[h]old unlawful and set aside the critical habitat designat[ions]" and "[e]njoin NMFS from taking any action to apply or enforce the critical habitat designat[ions]" for both species of seals, "including during Section 7 consultation."[52]

---

[50] Docket 27 at 6; Docket 1 at ¶ 3 (emphasis omitted) (citing 16 U.S.C. § 1532(5)(A)); *see also* AR_NMFS4234 (Comment 35 noting that "[s]everal commenters stated that the proposed designation is overbroad because it includes most of the geographical area occupied by the Beringia DPS within the U.S. [exclusive economic zone]"); AR_NMFS4289 (Comment 25 noting the same for the ringed seal).

[51] Docket 1 at ¶¶ 47–109.

[52] Docket 1 at 35–36.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 13 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 13 of 45

Defendants oppose and maintain that the bearded and ringed seal critical habitat designations satisfy the requirements of the ESA.[53]

A map of the critical habitat designated for the bearded seal and a map of its global distribution is included as Appendix 1.[54]  A map of the critical habitat designated for the ringed seal and a map of its global distribution is included as Appendix 2.[55]

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the [Administrative Procedure Act] of its own force may serve as a jurisdictional predicate."[56]

## LEGAL STANDARD

The State seeks judicial review under the Administrative Procedure Act ("APA").[57]  Under that statute, a reviewing court shall set aside agency action that

---

[53] Docket 31; Docket 30.

[54] *See* AR_NMFS4259 (map of final critical habitat designation for the bearded seal); AR_REF1781 (map of global distribution of bearded seals, with the bearded seal of the Beringia DPS denoted in orange).

[55] *See* AR_NMFS4315 (map of final critical habitat designation for the ringed seal); AR_REF2037 (map of global distribution of ringed seals, with the Arctic ringed seal denoted in orange).

[56] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

[57] Docket 27 at 3.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 14 of 45

is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"[58]  Agency action is arbitrary and capricious if it:

> relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[59]

By contrast, an agency action is proper if "the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made."[60]  "Whether agency action is 'not in accordance with law' is a question of statutory interpretation, rather than an assessment of reasonableness in the instant case."[61]

## DISCUSSION

Preliminarily, the Court addresses the Service's assertion that the State failed to establish its standing to bring this lawsuit because the State failed to allege that it had standing and failed to submit standing declarations with its opening brief.[62]  To establish standing, a plaintiff must show (1) an injury in fact, meaning an "invasion of a legally protected interest that is (a) concrete and particularized,

---

[58] 5 U.S.C. § 706(2)(A).

[59] *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (quoting *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)).

[60] *Id.* (quoting *Greater Yellowstone Coal.*, 665 F.3d at 1023).

[61] *Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010) (citing *Nw. Env't Advocs. v. EPA*, 537 F.3d 1006, 1014 (9th Cir. 2008)).

[62] Docket 31 at 20.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 15 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 15 of 45

and (b) actual or imminent, not conjectural or hypothetical"; (2) causation; and (3) redressability, meaning that "the injury will likely be redressed by a favorable decision."[63]  States are not "normal litigants for the purposes of invoking federal jurisdiction," and a "well-founded desire to preserve a state's sovereign territory supports federal jurisdiction, which may be further reinforced by ownership of a great deal of the territory alleged to be affected by a challenged federal action."[64]  Where a state has shown that it would suffer an impact on revenues due to an agency decision, the state has demonstrated "an interest in the judgment sufficient to establish Article III standing."[65]

To establish standing, the State relies on the comments it submitted to NMFS regarding the proposed bearded and ringed seal critical habitats and on a declaration by Douglas Vincent-Lang, Commissioner of the Alaska Department of Fish and Game, filed with its reply.[66]  While the declaration's filing was belated, the Court accepts the declaration as filed and finds that the State has adequately established its standing to maintain this action.  As the State noted in its comments

---

[63] *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[64] *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1178 (9th Cir. 2011) (alterations and internal quotation marks omitted) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518–19 (2007)).

[65] *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 963–66 (9th Cir. 2015) (first citing *Didrickson v. U.S. Dep't of the Interior*, 982 F.2d 1332, 1338 (9th Cir.1992); and then citing *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160–61 (1981)) (holding that Alaska established standing as an intervenor when an agency rule would have resulted in a reduction of Alaska's statutory entitlement to revenue from timber sales).

[66] *See* Docket 33 at 5 (citing AR_PUB14283, AR_PUB14286–90), 37–44 (Decl. Vincent-Lang).

to the agency regarding the proposed critical habitats, the State manages "vast, interconnected marine ecosystems [to] support healthy populations of fish and wildlife species," including bearded and ringed seals, to "provide ample food, recreation, and economic benefits to Alaskans."[67]  Furthermore, the State maintains that oil and gas development on Alaska's North Slope and the adjacent offshore areas of the Beaufort and Chukchi Seas provides numerous jobs and revenue to Alaskan communities[68] and promotes Alaskans' "economic and social welfare."[69]  The State maintains, however, that the critical habitat designations will result in "delays and regulatory uncertainty"—such as lengthy litigation—to oil and gas development.[70]  Indeed, NMFS identified "oil and gas exploration, development, and production" as one of "four primary sources of potential threats

---

[67] *See* AR_PUB14291; AR_PUB14284 ("Oil and gas activities [in Alaska] are regulated pursuant to the Marine Mammal Protection Act (MMPA) and other federal, state, and local regulatory mechanisms to ensure they have no more than a negligible impact on marine mammals, including bearded and ringed seals."). *See also* Docket 33 at 39–40, ¶ 10 (noting that the bearded and ringed seals "are two of the most common marine species in the Arctic region and are found throughout much of Alaska's coastal waters and territorial seas"), ¶ 14 (explaining that "Alaska, as a sovereign state and pursuant to its public trust responsibilities, has a significant interest in managing and conserving wildlife and natural resources within its jurisdiction, including the bearded seal and ringed seal, as well as their habitat and food sources").

[68] AR_PUB14286–87.

[69] Docket 33 at 41, ¶ 15.

[70] AR_PUB14289; AR_PUB14287; Docket 33 at 41–42, ¶¶ 15–18.  In its comments, the State noted various lawsuits regarding oil and gas development that ensued after (1) a polar bear critical habitat designation in Alaska's North Slope and nearby waters, and (2) a beluga whale critical habitat designation in Cook Inlet, "a large, semi-enclosed estuary in southcentral Alaska." *See* AR_PUB14289 & n.28 (citing *Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 550 (9th Cir. 2016)); *Cook Inletkeeper v. Raimondo*, 533 F. Supp. 3d 739, 745 (D. Alaska 2021); *Cook Inletkeeper v. U.S. Dep't of the Interior*, Case No. 3:22-cv-00279-SLG (D. Alaska filed Dec. 21, 2022).

to one or more" essential habitat features for both the bearded seal and the ringed seal that may require special management considerations or protection.[71] Thus, the State maintains that the invalidation of the critical habitat designations would redress economic harm to the State resulting from delayed oil and gas exploration, development, and production.[72] Defendants do not directly dispute these assertions.

In addition, the Service's critical habitat designations expand "from the Alaska shoreline to the international dateline in much of the Bering Sea, all of the Chukchi Sea, and the shelf of the Beaufort Sea."[73] The final critical habitat designations show that almost all of Alaska's coastal waters from its northeastern border with Canada to a southwestern point near Nunivak Island are included in the Service's designations for one or both seals.[74] The parties do not dispute, and the Court finds, that such an expanse constitutes "a great deal of the territory alleged to be affected by a challenged federal action."[75] Accordingly, the Court finds that the State has standing to bring this challenge.

---

[71] AR_NMFS4218; AR_NMFS4269.

[72] *See Organized Vill. of Kake*, 795 F.3d at 963–66 (citations omitted).

[73] AR_PUB14291.

[74] *See* AR_NMFS4259 (map of final critical habitat designation for the bearded seal) (reproduced in Appendix 1); AR_NMFS4315 (map of final critical habitat designation for the ringed seal) (reproduced in Appendix 2).

[75] *Sierra Forest Legacy*, 646 F.3d at 1178 (internal quotation marks omitted) (quoting *Massachusetts*, 549 U.S. at 519).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 18 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 18 of 45

The Court turns to the State's claims that the Service's critical habitat designations constitute error.

## I.   Critical Habitat Essential to the Conservation of the Species & Failure to Consider Foreign Occupied Areas

The Court considers the State's first two arguments together: first, that "the designation of all, or virtually all, of the species' suitable habitat" within the United States as critical habitat "is wholly inconsistent with the plain language" of the ESA and its regulatory provisions[76]; and second, that NMFS failed to address why the areas designated are essential to the seals' survival and recovery when substantial portions of the seals' ranges are outside of United States territory.[77]   The State also asserts that, "[a]t the very least, NMFS erred because it did not explain *why* each massive designation 'is essential to [the species'] persistence.'"[78]

"The ESA identifies two types of critical habitat: occupied and unoccupied."[79] Here, the State disputes the Service's designation of occupied areas as critical habitat for the seals; the parties do not dispute the Service's decision to not designate any unoccupied areas.  Nonetheless, the Court discusses both types of critical habitat because the parties draw distinctions between the two.

---

[76] Docket 27 at 21.

[77] Docket 27 at 25.

[78] Docket 27 at 22 (emphasis in original) (quoting *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 67 F.4th 1027, 1046–47 (9th Cir. 2023) (holding that FWS erred in designating unoccupied critical habitat for the jaguar by failing to explain why those areas themselves were necessary to the species' survival and recovery)).

[79] *Ctr. for Biological Diversity*, 67 F.4th at 1035 (citing 16 U.S.C. § 1532(5)(A)).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 19 of 45

For areas occupied by a species, critical habitat is defined in the ESA as "the specific areas within the geographical area occupied by the species . . . on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection."[80] Conservation is defined in the ESA as "the use of all methods and procedures which are necessary to bring any . . . threatened species to the point at which"[81] "the species is recovered,"[82] meaning "improvement in the status of [the] listed species to the point at which listing is no longer appropriate under the criteria set out in [16 U.S.C. § 1533(a)(1)]."[83]

"[T]he touchstone of unoccupied critical habitat (in contrast to occupied critical habitat) is whether the area *itself* is 'essential' to the conservation of the species.'"[84] For example, the Ninth Circuit held that FWS properly designated areas upstream of a sucker fish habitat as unoccupied critical habitat, because FWS found that the upstream areas were "the primary sources of high quality course sediment for the downstream occupied portions of the river" and that the

---

[80] 16 U.S.C. § 1532(5)(A)(i).

[81] 16 U.S.C. § 1532(3).

[82] 50 C.F.R. § 424.02.

[83] *Id.*

[84] *Ctr. for Biological Diversity*, 67 F.4th at 1044 (emphasis in original) (quoting *Otay Mesa Prop., L.P. v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 355, 376 (D.D.C. 2018)) (other citations omitted).

sediment flowing downstream "provided spawning and feeding grounds and helped maintain water quality and temperature."[85]

Although "the standard for designating unoccupied critical habitat is 'more demanding' than the standard for designating occupied critical habitat," "the ESA requires that both occupied and unoccupied areas be 'essential' to conservation before they can be designated as critical habitat."[86] As the Ninth Circuit explained, "the Supreme Court [has] construed the ESA's definition of 'critical habitat'— whether occupied or unoccupied—as including only 'areas that are *indispensable* to the conservation of the endangered [or threatened] species.'"[87] "While 'conservation' encompasses both ensuring species' survival and recovery, the ESA nonetheless requires the agency to show that *designation of critical habitat* is 'necessary' or 'indispensable' in accomplishing these objectives, not merely 'beneficial' to or capable of 'promoting' survival or recovery."[88] Therefore, "for an area to be 'essential' for conservation of a species, . . . the agency must determine

---

[85] *Id.* at 1040–41 (internal quotation marks omitted) (explaining the Ninth Circuit's decision in *Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977 (9th Cir. 2015)).

[86] *Id.* at 1035 (first quoting 16 U.S.C. § 1532(5)(A)(i)–(ii); and then quoting *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 616 F.3d 983, 990 (9th Cir. 2010)).

[87] *Id.* at 1037 (emphasis in original) (quoting *Weyerhaeuser v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 20 (2018)).

[88] *Id.* at 1038 (emphasis in original) ("Congress not only limited 'conservation' to include those 'methods and procedures *which are necessary* to bring any endangered species or threatened species to the point at which the measures provided pursuant to this Act are no longer necessary,' it also expressly limited the authority to designate habitat areas for protection to only 'critical habitat,' which it defined as areas 'essential' for conservation." (first quoting 16 U.S.C. § 1532(3) (emphasis added); and then quoting 16 U.S.C. § 1532(5)(A))).

that the species cannot be brought 'to the point at which the measures provided pursuant to [the ESA] are no longer necessary' without the critical habitat designation."[89]

Further, when determining whether to list a species as endangered or threatened under the criteria in 16 U.S.C. § 1533(a)(1), the Secretary must "tak[e] into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species . . . within any area under its jurisdiction, or on the high seas."[90] Because "conservation" is defined to result in species recovery,[91] the concept of "conservation" also warrants consideration of foreign nation efforts when determining whether listing would still be appropriate and, therefore, whether the proposed critical habitat areas would be indispensable to ensuring species' survival and recovery.[92]

---

[89] *Id.* at 1037 (quoting 16 U.S.C. § 1532(3)).

[90] 16 U.S.C. § 1533(b)(1)(A).

[91] *See* 50 C.F.R. §§ 424.02, 402.02 (defining recovery to mean "improvement in the status of [the] listed species to the point at which listing is no longer appropriate under the criteria set out in [16 U.S.C. § 1533(a)(1)]").

[92] In *Center for Biological Diversity*, the Ninth Circuit remanded with directions to vacate two unoccupied critical habitat designations for the jaguar, which largely resided outside of the United States. 67 F. 4th at 1030–31. As part of its holding regarding one of the units, the Circuit Court noted that FWS "conceded there is nothing in the Final Rule establishing that the jaguar will be unable to recover or survive if [that unit] is not designated as critical habitat"; it further explained that "experts from both the United States and Mexico" concluded that, "[b]ecause such a small portion of the jaguar's range occurs in the U.S., it is anticipated that recovery of the species will rely primarily on actions that occur outside the U.S." *Id.* at 1045 (citation omitted). The Ninth Circuit therefore held that "FWS's designation of [that unit] as unoccupied critical habitat was arbitrary and capricious because the FWS failed to provide a 'reasoned evaluation of the relevant factors,' and its designation '[was] without substantial basis in fact.'" *Id.* at 1046 (citations omitted). While the Ninth Circuit's discussion in *Center for Biological Diversity* relates to unoccupied habitat, the case is nonetheless instructive because the Circuit Court considered

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 22 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 22 of 45

The State first maintains that "each seal's entire 160-million-plus-acre designation cannot be indispensable to ensuring the conservation of that species."[93] NMFS responds that, because NMFS only designated occupied areas as critical habitat, it did not need to determine that the entirety of those designated areas was essential.[94] NMFS asserts, rather, that it must only identify "those occupied areas [which] contain the physical and biological features essential to the conservation of the species" and that it "need not further determine that the specific areas are essential for the conservation of the species."[95]

In this case, NMFS identified physical and biological features that it alleged are essential to the conservation of the bearded and ringed seals "within U.S. waters occupied by the species."[96] Then, noting that the sea ice essential features are "dynamic" and "vary spatiotemporally"[97] and that both seals' primary prey species "occur throughout the geographical area occupied" by the seals, NMFS decided to "designat[e] as critical habitat a single specific area that contains all

_____

the jaguar's large presence outside of the United States when remanding with directions to vacate and because the Circuit Court in the same case emphasized that both occupied and unoccupied critical habitat must be "indispensable to the conservation" of the listed species. *Id.* at 1037 (emphasis and citation omitted).

[93] Docket 27 at 22 (emphasis omitted).

[94] Docket 31 at 23.

[95] Docket 31 at 23–24 (emphasis omitted) (citing 16 U.S.C. § 1532(5)(A)(i)–(ii)).

[96] AR_NMFS4213; AR_NMFS4264.

[97] AR_NMFS4215; AR_NMFS4267.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 23 of 45
Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 23 of 45

three of the identified essential features" for each seal species.[98]   These

designations resulted in a critical habitat for each seal species of over 160 million

acres,[99] expanding "from the Alaska shoreline to the international dateline in much

of the Bering Sea, all of the Chukchi Sea, and the shelf of the Beaufort Sea."[100]

NMFS made these designations, however, without explaining why the entirety of

each designated area is necessary to the seals' survival and recovery, or why a

smaller area would be inadequate for their conservation, especially since a

significant portion of the bearded seal's habitat and most of the ringed seal's

habitat are outside of United States territory, which is addressed further below.[101]

---

[98] AR_NMFS4218; AR_NMFS4269.

[99] *See* Docket 33 at 8 (citing AR_NMFS4314–15; AR_NMFS4258–59; AR_PUB14291).

[100] AR_PUB14291; *see also* AR_NMFS4259 (map of final critical habitat designation for the bearded seal) (reproduced in Appendix 1); AR_NMFS4315 (map of final critical habitat designation for the ringed seal) (reproduced in Appendix 2).

[101] *See Ctr. for Biological Diversity*, 67 F.4th at 1037 (citation omitted) (explaining that "[i]f certain habitat is essential, it stands to reason that if the [Service] did not designate this habitat, whatever the [Service] otherwise designated would be inadequate"). The State maintains that "[t]hese enormous designations deprive the statutory term 'essential' of meaning" and are so large that they "cannot be indispensable to ensuring the conservation of th[e] species." Docket 27 at 21–22 (emphasis omitted). While the Court agrees that the designated critical habitats are rather large, the Court is not persuaded that an area cannot be essential to the conservation of a species simply because it is large.

The State also asserts that NMFS erred by failing to "identify specific areas within the geographical area occupied by the species" because it designated "virtually all of the suitable habitat for the species in the U.S." Docket 27 at 24 (emphasis omitted) (quoting 50 C.F.R. § 424.12(b)). The Service's response that it complied with the ESA because it did not designate "the entire geographical area which can be occupied" by the seals is inapposite to the State's argument. Docket 31 at 22 (emphasis omitted) (quoting 16 U.S.C. § 1532(5)(C)). Rather, the State made its argument in further support of its position that NMFS failed to "explain *why* each massive designation 'is essential to [the species'] persistence.'" Docket 27 at 22 (emphasis in original) (citation omitted).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 24 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 24 of 45

CBD contends that the entirety of the areas designated as critical habitat is essential because the seals' habitat requirements are "extensive and dynamic."[102] It cites to comments submitted by the Marine Mammal Commission, which maintained that the "protection of the entire area is necessary to prevent the ringed seals that occur in the United States from becoming endangered and to bring them to the point where the protections afforded by the [ESA] are no longer necessary," and that "one cannot identify a less extensive, specific geographic location for breeding or molting that will reliably support these functions year after year than has been identified" by NMFS.[103] However, as the Court explains below, it is error to consider a species' survival and recovery within the United States only. And simply because NMFS is unable to identify a less extensive, specific geographic location for breeding or molting does not explain why the 160-million-plus-acre areas it identified as critical habitat are "'necessary' or 'indispensable' in [ensuring the seals' survival and recovery], not merely 'beneficial' to or capable of 'promoting' survival or recovery."[104] CBD further points to the Service's response to a comment in the final rule that, because the location of the seals' essential habitat features "are not static, and their location changes both seasonally and annually, a critical habitat designation must be large enough to account for such changes in

---

[102] Docket 30 at 20.

[103] Docket 30 at 21, 23 (alteration in original) (quoting AR_PUB0287–88) (other citation omitted).

[104] *See Ctr. for Biological Diversity*, 67 F.4th at 1038.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 25 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 25 of 45

the locations of essential features and the particular species' habitat requirements throughout their life history."[105]   Nonetheless, the ESA requires that the specific areas designated be essential.   In effect, the Service implicitly acknowledges that only a fraction of the designated areas may be indispensable to the seals' conservation at any one time.

Defendants also cite to the Ninth Circuit's decision in *Alaska Oil & Gas Ass'n v. Jewell*, a case about designating polar bear critical habitat, for the proposition that "NMFS must designate critical habitat areas large enough to encompass . . . essential [habitat] features wherever they may occur throughout the year and from year to year."[106]   In *Alaska Oil & Gas*, however, the Ninth Circuit held that the district court erred by "holding [the agency] to proof that existing polar bears actually use the designated area, rather than to proof that the area is critical to the future recovery and conservation of the species."[107]   In the instant case, the Court takes issue with the agency's lack of a finding that its designations—which include almost anywhere the seals might be found at any given time within United States jurisdiction—"is critical to the future recovery and conservation of the species."[108]

---

[105] Docket 30 at 25–26 (quoting AR_NMFS4235; AR_NMFS4290).

[106] Docket 31 at 9; *see* Docket 30 at 23.

[107] 815 F.3d at 550, 561 (holding that "[t]he district court erroneously focused on the areas existing polar bears have been shown to utilize rather than the features necessary for future species protection").

[108] *See id.* at 550.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 26 of 45

While NMFS appropriately explained how it delineated an area containing the seals' essential habitat features,[109] the problem is that it then designated virtually the entire area that "encompass[es] these essential features wherever they may occur throughout the year and from year to year,"[110] without linking why that entire area is indispensable to the survival and recovery of the seal species. Although the Court acknowledges the challenging nature of designating critical habitat for threatened species that inhabit Arctic waters, the Court does not read the ESA to permit the Service to designate nearly all of the seals' occupied habitat within the United States as indispensable to the seals' conservation. Therefore, the Court finds that the Service failed to act in accordance with the law.

As to foreign areas occupied by the seals, NMFS contends that "Plaintiff's assertion that NMFS should have taken the species' total range beyond U.S. territory and waters into account in designating critical habitat conflicts with the ESA's implementing regulations."[111] The Service maintains that because "[t]hose regulations state that NMFS 'will not designate critical habitat within foreign countries or in other areas outside of the jurisdiction of the United States,'" it "reasonably focused on critical habitat within U.S. jurisdiction to satisfy the statutory obligation to designate critical habitat for these species."[112] CBD echoes

---

[109] *See* AR_NMFS4215–18; AR_NMFS4267–69.

[110] Docket 31 at 9.

[111] Docket 31 at 26.

[112] Docket 31 at 26 (first quoting 50 C.F.R. § 424.12(g); and then citing AR_NMFS4213,

the Service's explanation and contends that, "[g]iven that NMFS does not designate critical habitat outside U.S. jurisdiction, protecting the seals' critical habitat areas within the United States is all the more essential."[113]

These explanations, however, do not address why the Service could not consider foreign nation efforts in determining what habitat in the United States would be indispensable to the seals, even though the Service can only designate critical habitat within United States territory.  The regulation that the Service cites, 50 C.F.R. § 424.12(g), simply prohibits designation of critical habitat "within foreign countries or in other areas outside of the jurisdiction of the United States"; it is otherwise silent.  It does not require the agency to only consider conservation efforts within the United States; nor does it prohibit consideration of foreign nation efforts in protecting a species.  It also does not conflict with the ESA, which expressly requires the Secretary to consider foreign nation efforts when making a listing determination, which then drives the requirement to designate critical habitat in United States territory.[114]  Indeed, the Service is required to consider foreign nation efforts when designating critical habitat, which, "whether occupied or unoccupied," "includ[es] only 'areas that are indispensable to the conservation of the endangered [or threatened] species.'"[115]  As explained above, "conservation"

_____

AR_NMFS4264).

[113] Docket 30 at 28.

[114] *See* 16 U.S.C. § 1533(a)(1), (a)(3)(A), (b)(1)(A).

[115] *Ctr. for Biological Diversity*, 67 F.4th at 1037 (emphasis omitted) (quoting *Weyerhaeuser*, 586

requires consideration of when a species would no longer need to be listed as endangered or threatened—an outcome that also requires "taking into account those efforts, if any, being made by any State or foreign nation . . . to protect such species."[116] Therefore, the Court finds that the Service's failure to consider foreign nation conservation efforts when designating the seals' critical habitats to be arbitrary and capricious, because it "entirely fail[ed] to consider an important aspect of the problem."[117]

An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[118] Because NMFS failed to consider any foreign nation efforts to conserve the seals, and because it failed to articulate a satisfactory explanation for why the entirety of the designated areas in U.S. territory are indispensable to the seals' survival and recovery, the Court finds the Service's

---

U.S. at 20). *See also supra* note 95.

[116] 50 C.F.R. §§ 424.02, 402.02; 16 U.S.C. § 1533(b)(1)(A). Moreover, the ESA contemplates conservation of a species globally, without distinction as to a species' recovery within United States territory versus outside of United States territory. So, for the Service to consider only a species' recovery within United States jurisdiction makes little sense, as a species may have recovered significantly outside of the United States and yet have relatively few numbers within United States territory. *See, e.g.*, *Ctr. for Biological Diversity*, 67 F.4th at 1045 (remanding with directions to vacate two unoccupied critical habitat designations for the jaguar, explaining that "any impact to the jaguar related to [one of the units would] be minimal" and that, "[b]ecause such a small portion of the jaguar's range occurs in the U.S., it is anticipated that recovery of the species will rely primarily on actions that occur outside the U.S.").

[117] *Zinke*, 900 F.3d at 1067 (citation omitted).

[118] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 29 of 45

critical habitat designations for the bearded seal and the ringed seal to be arbitrary and capricious and not in accordance with the law.

## II. Speculation of Presence of Essential Habitat Features

The State asserts that the ESA requires NMFS to identify where the essential habitat features, previously referred to as Primary Constituent Elements ("PCEs"), "are found within the larger occupied area to identify the areas that are critical habitat."[119] But the State notes that NMFS admitted that "it could not specifically identify where the sea ice essential features are located because they 'are dynamic and variable on both spatial and temporal scales.'"[120] The State maintains that the Service's analysis "contradicts the express language of the ESA that critical habitat comprises 'specific areas' where 'physical or biological features' 'essential to the conservation of the species' '*are found*.'"[121] In support of its position, the State cites to *Cape Hatteras Access Preservation Alliance v. U.S. Department of the Interior* and asserts that the D.C. District Court in that case "rejected the agency's excuses for why it could not ensure the identified essential features were within the designated areas—including, as in this case, that the features were 'dynamic,' along with lack of data—because its 'excuses have no

---

[119] Docket 27 at 27 & n.84 (citing Endangered and Threatened Wildlife and Plants; Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45020, 45023 (Aug. 27, 2019) (describing abandonment of term "primary constituent elements")).

[120] Docket 27 at 27–28 (quoting AR_NMFS4267–68; AR_NMFS4246).

[121] Docket 27 at 28 (emphasis in original) (quoting *Home Builders Ass'n of N. California v. U.S. Fish & Wildlife Serv.*, 268 F. Supp. 2d 1197, 1216 (E.D. Cal. 2003)).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 30 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 30 of 45

basis in the statute or in cases.'"[122]  The State contends that NMFS "erroneously focused on whether seals occupy the designated areas, and not on the essential features, as the statute and agency regulations require."[123]

NMFS responds that it did identify "specific areas that contain one or both of the sea ice essential features at certain times" and that it "did not speculate but rather relied on the best scientific data available about the distribution of ice seals and presence of sea ice during ice seal whelping and nursing activity."[124]  Indeed, the *Cape Hatteras* court noted that its holding "might be different if the Service had discussed observations of specific PCEs at one time and had evidence that the PCEs, though not always present, would return during the [species'] wintering season."[125]  To the extent the State asserts that NMFS must identify exactly where the seals' essential habitat features "are found" within the seals' occupied area, the Court rejects such an argument as "demand[ing] greater scientific specificity than available data could provide," given that the sea ice essential features are dynamic and variable.[126]  Thus, the Court finds that the Service adequately

---

[122] Docket 27 at 28–29 (quoting *Cape Hatteras Access Pres. All. v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 108, 122–23 (D.D.C. 2004)).

[123] Docket 27 at 32.

[124] Docket 31 at 29 (first quoting AR_NMFS4215, AR_NMFS4267; and then citing AR_NMFS4216, AR_NMFS4268).

[125] *Cape Hatteras*, 344 F. Supp. 2d at 122–23.  In addition, the ESA's implementing regulations allow for features to "include habitat characteristics that support ephemeral or dynamic habitat conditions."  50 C.F.R. § 424.02.

[126] *See Alaska Oil & Gas*, 815 F.3d at 555, 557–58 (holding that FWS need not "designate only areas containing actual den sites, as opposed to designating areas containing habitat suitable

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 31 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 31 of 45

explained how it identified the areas where the dynamic sea ice essential features would be found.[127]

## III. Failure to Identify Special Management Considerations

The State next contends that "NMFS erred because it did not specify any special management considerations or protections the designated area may require in the future."[128]  Pursuant to the ESA, occupied critical habitat may only be designated if the identified essential habitat features "may require special management considerations or protection,"[129] which is defined as "[m]ethods or procedures useful in protecting the physical or biological features essential to the conservation of listed species."[130]  The State maintains that, while NMFS identified four "'sources of potential threats': climate change, oil and gas exploration, marine shipping and transportation, and commercial fisheries[,] . . . the agency failed to discuss what measures may be necessary to protect the essential features from those threats."[131]  In addition, the State asserts that, because "the seals' habitat

---

for denning").

[127] This is not to say, however, that it was proper for the Service to designate as critical habitat the entire areas that it did simply because those areas had the potential to contain sea ice essential features.  As discussed above, the Service must still explain why those entire areas are indispensable to the seal species' conservation.

[128] Docket 27 at 33.

[129] 16 U.S.C. § 1532(5)(A)(i).

[130] 50 C.F.R. § 424.02.

[131] Docket 33 at 21 (quoting AR_NMFS4269–72; AR_NMFS4218–20).  Citing to *Cape Hatteras*, the State also maintains that NMFS failed to "discuss *how* each identified PCE . . . would need management or protection."  Docket 27 at 34 (emphasis in original) (quoting 344 F. Supp. 2d at 124).  However, as CBD points out, the agency in *Cape Hatteras* "entirely failed to identify

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 32 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 32 of 45

will be protected through existing regulatory mechanisms, including ESA Section 7 [consultation] and Section 101(a) of the Marine Mammal Protection Act ('MMPA')," "no special management considerations or protections are needed to protect the seals' habitat."[132]   The State maintains that the designated area consequently "fails to meet the ESA's two-part definition of critical habitat."[133]

The Court disagrees.  The ESA's requirement to determine that essential habitat features "*may* need special management considerations or protection" is a "relatively minor legal hurdle imposed by this section of the statute."[134]   "[T]he Service does not have to identify the source of such considerations or protection, merely that the considerations or protection may be necessary in the future."[135]   Moreover, "[i]n the context of the special management or protection analysis, the existence of alternative protections or programs does not excuse FWS from designating critical habitat."[136]   Here, NMFS adequately determined that the seals'

---

features that may require special management considerations or protections, mentioning the statutory requirement only briefly in response to a comment and 'passing . . . it [over] without analysis of any kind.'"  Docket 30 at 37 (quoting 344 F. Supp. 2d at 124).  Thus, the Court reads *Cape Hatteras* to require the agency to identify special management considerations or protections, as required by the ESA, but not to require the identification of the specific measures needed to protect essential habitat features from identified threats.

[132] Docket 33 at 21–22.

[133] Docket 33 at 22.

[134] *Ariz. Cattle Growers' Ass'n v. Kempthorne*, 534 F. Supp. 2d 1013, 1031 (D. Ariz. 2008) (emphasis in original), *aff'd sub nom. Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160 (9th Cir. 2010).

[135] *Alaska Oil & Gas Ass'n v. Salazar*, 916 F. Supp. 2d 974, 991 (D. Alaska 2013), *rev'd and remanded on other grounds sub nom. Alaska Oil & Gas*, 815 F.3d 544.

[136] *Alaska Oil & Gas*, 815 F.3d at 564 (citing *NRDC v. U.S. Dep't of the Interior*, 113 F.3d 1121,

essential habitat features may need special management considerations or protections from the four aforementioned potential threats.[137] NMFS specified how each potential threat may impact essential habitat features, e.g., that greenhouse gases due to climate change is a major contributing factor to loss of sea ice, and that use of icebreaking ships in marine shipping and transportation may "pose greater risks" to sea ice features.[138] Accordingly, the Court rejects the State's argument here.

## IV.    Failure to Find that Critical Habitat Designation is Prudent

The State asserts that "NMFS erred because it did not make a specific prudency determination in the final critical habitat rules" and that the "record supports a not-prudent finding."[139] The ESA provides that the Secretary, "to the maximum extent prudent and determinable—shall, concurrently with making a determination . . . that a species is an endangered or a threatened species, designate any habitat of such species which is then considered to be critical habitat."[140] ESA regulations also provide that "[i]f designation of critical habitat is not prudent or if critical habitat is not determinable, the Secretary will state the

---

1127 (9th Cir. 1997)).

[137] AR_NMFS4218–20; AR_NMFS4269–72.

[138] AR_NMFS4218–20; AR_NMFS4269–72.

[139] Docket 27 at 35, 39.

[140] 16 U.S.C. § 1533(a)(3)(A)(i).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 34 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 34 of 45

reasons for not designating critical habitat in the publication of proposed and final rules listing a species."[141]

However, as Defendants point out, this Court has previously held that there is no "requirement in the ESA or in its enforcing regulations that obliges the Service to expressly find, and to so state in the Final Rule, that the designation was prudent from the outset."[142] "Generally, the Service's decision concerning the prudency of a designation is implied with the continuation and completion of such designation. In contrast, it is necessary for the Service to expressly justify its actions when it finds designation to not be prudent, which is not the case here."[143] Thus, while the State may disagree with the Service's findings here, the Court declines to read into the ESA or its regulations a requirement for an express prudency determination when making a critical habitat designation.

## V. Failure to Consider Economic Impacts

The ESA requires that NMFS "tak[e] into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat," and authorizes NMFS to "exclude any area from

---

[141] 50 C.F.R. § 424.12(a).

[142] *See* Docket 31 at 42; Docket 30 at 40–41; *Salazar*, 916 F. Supp. 2d at 996.

[143] *Salazar*, 916 F. Supp. 2d at 996 (emphasis omitted). And, as CBD notes, the Service addressed commenters' concerns regarding the prudency of the designations in the final rules and found that none of the reasons the commenters offered would lead to a determination that "a designation would not be prudent." Docket 30 at 38–39 (citing AR_NMFS4250; AR_NMFS4307).

critical habitat if [NMFS] determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat."[144]  In this case, the State and the North Slope Borough requested that specific areas be excluded pursuant to the ESA.[145]

The State maintains that NMFS "erred both in its consideration of the economic impacts of the seals' critical habitat designations and whether to exclude areas from the designations to avoid future resource conflicts."[146]  The State asserts that the "variety of activities" that NMFS identified that may adversely affect the seals' critical habitats—such as oil and gas exploration, development and production—are also economic activities "critical to the economy of Alaska's North Slope and to the State generally," which the State and the North Slope Borough, the northernmost borough in Alaska, explained in their comments to NMFS.[147] Because of this, "the State urged NMFS to exclude from critical habitat a 20-mile buffer zone around communities and along the Beaufort Sea coast."[148]  The North Slope Borough "similarly requested exclusion of a 10-mile buffer zone around all North Slope villages and all lands conveyed to the Borough or to Alaskan Native

---

[144] 16 U.S.C. § 1533(b)(2).

[145] *See* AR_PUB14286–88, AR_PUB14301; AR_PUB14239–40, AR_PUB14539–41.

[146] Docket 27 at 41.

[147] Docket 27 at 42 (first quoting AR_NMFS4278-79, AR_NMFS4224–25; then quoting AR_NMFS4269–72, AR_NMFS4218–20; then citing 16 U.S.C. § 1532(5)(A)(i); and then citing AR_PUB14284–88, AR_PUB14236-40, AR_PUB14537–40).

[148] Docket 27 at 42–43 (citing AR_PUB14286–88, AR_PUB14301).

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 36 of 45

corporations, along with shipping lanes needed for the transportation of good[s] and services to and from North Slope communities."[149]  However, NMFS chose to "not exercis[e] [its] discretion to further consider and weigh the benefits of excluding any particular area based on economic impacts against the benefits of designation," because it "concluded that the potential economic impacts associated with the critical habitat designation are modest both in absolute terms and relative to the level of economic activity expected to occur in the affected area, which is primarily associated with oil and gas activities that may occur in the Beaufort and Chukchi seas."[150]

Defendants contend that NMFS met its responsibilities here by "prepar[ing] exhaustive Impact Analysis Reports"[151] and "[u]sing the 'baseline' approach endorsed by the Ninth Circuit," which allows assessment of "the incremental impacts attributable to the critical habitat designation relative to a baseline that reflects existing regulatory impacts in the absence of the critical habitat."[152]  The

---

[149] Docket 27 at 43 (citing AR_PUB14239–40, AR_PUB14540).

[150] AR_NMFS4223; AR_NMFS4274.

[151] Docket 30 at 45 (citing AR_NMFS3913; AR_NMFS4065).

[152] Docket 31 at 44 (first quoting AR_NMFS4221, AR_NMFS4272; and then citing *Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1173 (9th Cir. 2010)).  NMFS explained that "the direct incremental costs of th[e] critical habitat designation[s] are expected to be limited to the additional administrative costs of considering [the seals'] critical habitat[s] in future section 7 consultations."  Referencing its Final Impact Analysis Reports, the Service calculated the total "the total incremental costs associated with th[e] critical habitat designation[s] over the next 10 years, in discounted present value terms," at "an annualized cost of $74,900 at both a 7 percent and a 3 percent discount rate" for the bearded seal and "an annualized cost of $95,000 at both a 7 percent and a 3 percent discount rate" for the ringed seal.  NMFS also noted that approximately 81 percent of these incremental costs for the bearded seal and 83 percent of the

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 37 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 37 of 45

State does not challenge NMFS's use of the baseline approach, but responds that the critical habitat designation provides "no additional regulatory protection" because the seals' habitat is already protected under the Marine Mammal Protection Act and the ESA § 7 "jeopardy" analysis.[153] The State maintains that, if there are no additional benefits from critical habitat designation, then NMFS "failed to properly consider the exclusion of areas from critical habitat" and, "[a]t a minimum, should have excluded the areas along Alaska's North Slope as requested by Alaska."[154]

The ESA provides that the Secretary "may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat."[155] While the statute "requires the Secretary to consider economic impact and relative benefits before deciding whether to exclude an area from critical habitat or to proceed with designation," the statute is "not 'drawn so that a court would have no meaningful standard

---

costs for the ringed seal are "associated with oil and gas activities in the Chukchi and Beaufort seas and adjacent onshore areas." AR_NMFS4222-23; AR_NMFS4274.

[153] Docket 33 at 29, 31. The Court notes, however, that the ESA § 7 consultation regarding adverse modification to critical habitat is a separate, if overlapping, benefit with the ESA § 7 jeopardy analysis that NMFS identified and discussed in the final rules. *See* 16 U.S.C. § 1536(a)(2) (providing that "[e]ach federal agency shall, in consultation with . . . the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species *or* result in the destruction or adverse modification of [the critical] habitat of such species" (emphasis added)); AR_NMFS4221; AR_NMFS4273.

[154] Docket 33 at 33.

[155] 16 U.S.C. § 1533(b)(2).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 38 of 45

against which to judge the [Secretary's] exercise of [his] discretion' not to exclude."[156]  Whether an agency "ignored some costs and conflated the benefits of designating [critical habitat] with [other] benefits . . . is the sort of claim that federal courts routinely assess when determining whether to set aside an agency decision as an abuse of discretion under [5 U.S.C.] § 706(2)(A)."[157]

Given the Service's lack of explanation for why the entire 160-million-plus acres it designated as critical habitat for the seals is essential to their conservation, the Court also finds that NMFS abused its discretion in deciding not to consider exclusion of any areas from critical habitat, including its decision to not consider exclusion of a "20-mile buffer zone around communities and along the Beaufort Sea coast" as requested by the State, and "a 10-mile buffer zone around all North Slope villages and all lands conveyed to the Borough or to Alaskan Native corporations, along with shipping lanes needed for the transportation of good[s] and services to and from North Slope communities," as requested by the North Slope Borough.[158]  If "the primary benefit of a critical habitat designation" is the ESA § 7 consultation requirement regarding adverse modification to critical

---

[156] *Weyerhaeuser*, 586 U.S. at 25 (first citing 16 U.S.C. § 1533(b)(2); and then quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).

[157] *Id.* (citing *Judulang v. Holder*, 565 U.S. 42, 53 (2011) ("When reviewing an agency action, we must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." (internal quotation marks omitted))).

[158] Docket 27 at 42–43 (first citing AR_PUB14286–88, AR_PUB14301; and then citing AR_PUB14239–40, AR_PUB14540).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 39 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 39 of 45

habitat—a requirement which "overlap[s] [with the already existing] requirement that Federal agencies ensure that their actions are not likely to jeopardize the species' continued existence"[159]—then NMFS should have considered whether a seemingly minor increase in "the benefits of specifying such area as part of the critical habitat" is outweighed by "the benefits of . . . exclusion," which may include economic benefits for the State and residents on the North Slope of Alaska.[160]

## VI.    Remedy

The Ninth Circuit has held that remand without vacatur should be ordered only in "limited circumstances" where "equity demands" doing so.[161] "When determining whether to leave an agency action in place on remand, [a court] weigh[s] the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed.'"[162] Given that the Service determined that "[t]he primary impacts of a critical habitat designation [for both seal species] arise from the ESA section 7(a)(2) requirement that Federal agencies ensure that their actions are not likely to result in the destruction or adverse modification of critical habitat," which "overlap[s] [with the already existing]

---

[159] AR_NMFS4221; AR_NMFS4273.

[160] 16 U.S.C. § 1533(b)(2).

[161] *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (citations omitted) (collecting cases where courts remanded without vacatur because vacatur would, for example, risk potential extinction of snails or lead to air pollution).

[162] *Id.* (citation omitted); *see also Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 40 of 45

requirement that Federal agencies ensure that their actions are not likely to jeopardize the species' continued existence,"[163] the Court finds that any consequences of an interim change are not so disruptive as to warrant leaving the designations in place. Accordingly, the Court remands with vacatur.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that the State's request for declaratory and injunctive relief at Docket 27 is GRANTED in part and DENIED in part as set forth herein. The Court VACATES the Service's final rules designating critical habitat for the bearded seal of the Beringia DPS and the Arctic ringed seal and REMANDS to the agency for further proceedings consistent with this order.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 26th day of September 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[163] AR_NMFS4221; AR_NMFS4273.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 41 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 41 of 45

**Appendix 1**



Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 42 of 45
Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 42 of 45



Figure 3. -- The global distribution of bearded seals as adapted from maps of known extent in Burns (1981) and Kovacs (2002). The colored areas of core distribution are those areas of known extent that are in waters <500 m deep. The subspecies range boundaries were approximated from the literature.

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 43 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 43 of 45

**Appendix 2**



Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 44 of 45
Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 44 of 45



Figure 2. -- Distributions of the five subspecies of ringed seals (*Phoca hispida*), adapted from maps published by King (1964), Heptner et al. (1976), Frost and Lowry (1981), and Härkönen and Lunneryd (1992).

Case No. 3:23-cv-00032-SLG, *State of Alaska v. National Marine Fisheries Service, et al.*
Decision & Order
Page 45 of 45

Case 3:23-cv-00032-SLG   Document 39   Filed 09/26/24   Page 45 of 45